620 A.2d 525

**COMMONWEALTH of Pennsylvania,**

**v.**

**Kenneth M. KASUNIC, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1992.

Filed Feb. 19, 1993.

114

Donald P. Tarosky, Greensburg, for appellant.

Leslie J. Uncapher, Asst. Dist. Atty., Vandergrift, for Com., appellee.

Before ROWLEY, President Judge, and DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This appeal implicates the burgeoning doctrine of relating back blood alcohol content (BAC) evidence of a defendant in accordance with our Supreme Court's companion decisions in *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992) and *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992). On May 6, 1991, a jury convicted appellant, Kenneth Kasunic, of one count of driving under the influence of alcohol with a blood alcohol content over 0.10%.[1] Appellant filed timely post-trial motions which were denied. The trial court then sentenced appellant and this timely appeal followed.

The facts giving rise to the instant appeal are as follows: In the early morning hours of December 23, 1989, the temperature was approximately four (4) degrees below zero Fahrenheit. At approximately 5:20 a.m., the Penn Township police received a call through 911 that there was a vehicle on the berm of Pleasant Valley Road in Penn Township, with a man lying next to the vehicle. Penn Valley Police Officer Anthony

---

1. 75 Pa.C.S.A. § 3731(a)(4). Although appellant was also charged with one count of driving under the influence of alcohol pursuant to subsection (a)(1) of section 3731, the jury acquitted him of this count.

Pecora responded to the call and found appellant lying on the pavement next to a pickup truck. The vehicle was running and the driver's door was open. Officer Pecora picked up appellant from the roadway and smelled alcohol. Officer Pecora radioed for backup. When the backup arrived, the police officers placed appellant in a patrol car out of the inclement weather. Soon afterwards, appellant was transported to the police station where field sobriety tests were administered. Appellant failed two of the tests. Appellant was then transported to Monsour Hospital to have blood samples taken to ascertain his BAC. The test, taken approximately fifty minutes later, revealed appellant's BAC to be 0.21%. Based on this evidence, the Commonwealth filed the charges against appellant which serve as the basis for this appeal.

Appellant raises the following issues for our review:

1. Did the Commonwealth present sufficient evidence to establish that the defendant was operating a motor vehicle when his blood alcohol level was in excess of 0.10% in violation of 75 Pa.C.S.A. § 3731(a)(4);

2. Did the lower court error [sic] in permitting the introduction of [a] statement made by the defendant prior to establishing the corpus delicti of the crime?

We shall consider both of appellant's issues.

First, appellant questions whether the Commonwealth presented sufficient evidence to establish a violation of Pennsylvania's drunk driving statute given that the Commonwealth failed to present evidence relating appellant's blood alcohol content back to the time he was driving. Our standard of review for claims raising the sufficiency of the evidence is well established. "[A]n appellate court must review the evidence presented and all reasonable inferences drawn therefrom in a light most favorable to the verdict winner and determine whether on the record there is a sufficient basis to support the challenged conviction." *Commonwealth v. Madison*, 501 Pa. 485, 490, 462 A.2d 228, 231, (1983) (citations omitted). The proper application of the sufficiency test requires us to evaluate the entire trial record and all evidence actually received in the aggregate and not as fragments isolated from the totality

of the evidence. *Commonwealth v. Harper,* 485 Pa. 572, 576, 403 A.2d 536, 538 (1979). *See also Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986) (explicating appropriate application of standard of review set forth in *Harper, supra* ). This standard means that we must review the evidence in the light most favorable to the Commonwealth as the verdict winner, and drawing all proper inferences favorable to the Commonwealth, determine if the jury could reasonably have concluded that all of the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Edwards,* 521 Pa. 134, 143, 555 A.2d 818, 823 (1989). Moreover, the jury, as the trier of fact, is free to believe all, some or none of the evidence presented. *Griscavage,* 512 Pa. at 543, 517 A.2d at 1257.

Appellant was found guilty of section 3731(a)(4) of the Pennsylvania Vehicle Code, which states:

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle *while:*

\* \* \* \* \* \*

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

75 Pa.C.S.A. § 3731(a)(4) (emphasis added).

In *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992) and the companion case of *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992), the Pennsylvania Supreme Court held that in order to sustain a conviction based on subsection (a)(4), the Commonwealth must relate the evidence of a defendant's blood alcohol content (BAC) back to the time the defendant was driving, operating, or in physical control of an automobile. *Jarman,* 529 Pa. at 97, 601 A.2d at 1231. In both *Jarman* and *Modaffare,* the individual defendants had BAC's of 0.114% and 0.108%, respectively. Jarman's blood sample was taken approximately one hour after being arrested for drunk driving while Modaffare's blood sample was taken two hours after being involved in an auto accident. In both cases, the Commonwealth presented expert medical testimony which revealed that a person's BAC peaks

gradually one hour from the time he last consumed an alcoholic beverage, and declines thereafter. Thus, although a person may register a particular BAC when samples are taken, he may have a higher or lower BAC while driving.

The Court in both *Jarman* and *Modaffare* reasoned that because of the specific and unique wording of the Pennsylvania drunk driving statute, which makes it an offense to drive, operate or be in physical control of an automobile *while* his BAC is 0.10% or greater, the Commonwealth cannot meet its burden of proving that a defendant has been driving with a BAC level of 0.10% or greater solely by presenting evidence of the BAC. Rather, the Commonwealth must relate the BAC results back to the time the defendant operated the motor vehicle. Evidence relating a defendant's BAC to the time of driving is both a factor of the BAC levels themselves and the amount of time it takes the Commonwealth to take blood samples from the defendant. As the Court explained:

> In cases where test results show levels of alcohol significantly above 0.10% and where blood samples have been obtained soon after the suspects have been stopped, there is a strong inference that blood alcohol levels were in the prohibited range while driving. However, where ... the blood test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the sample was not insignificant, the inference of guilt is weakened.

*Jarman,* 529 Pa. at 96, 601 A.2d at 1231. Thus, the Supreme Court found insufficient evidence upon which to convict Jarman and Modaffare. Their individual BAC's were barely greater than the requisite 0.10% necessary to convict, and the blood samples were taken at least an hour after the defendants were arrested. Had their BAC's peaked at the time the samples were drawn, they could have been driving with a BAC of less than 0.10%.

In *Commonwealth v. Osborne,* 414 Pa.Super. 124, 606 A.2d 529 (1992), *allocatur denied,* 531 Pa. 660, 613 A.2d 1209 (1992), a panel of this Court arrested judgment upon similar facts. In that case, the police obtained blood samples from the defendant Osborne fifty minutes after being arrested.

Osborne's BAC registered 0.1488%. We held that Osborne's BAC did not substantially deviate from 0.10% and the evidence of guilt was further weakened by the time lapse between Osborne's arrest and the time the blood samples were taken. *Id.* 414 Pa.Super. at 129, 606 A.2d at 531. The *Osborne* panel further explained the Supreme Court's holdings in *Jarman* and *Modaffare* as follows:

[T]he [S]upreme [C]ourt did not draw a bright numerical line between what it would consider to be a minimal upward departure suggesting a weak inference of guilt and what would constitute a significant upward deviation which would give rise to a strong inference of guilt. In a like vein, the [S]upreme [C]ourt failed to establish a temporal cut-off for the drawing of a suspect's blood to indicate either a weak or strong inference of guilt. In our view, and in accordance with the dual standards set forth by our [S]upreme [C]ourt in *Jarman* and *Modaffare,* the stronger the inference of guilt, the less significant is the necessity for relating back. Conversely, the weaker the inference of guilt, the more vital is the necessity for evidence of relating back an accused's BAC test result to the time of driving.

*Id.* 414 Pa.Super. at 128, 606 A.2d at 531. Thus, contrary to appellant's assertion in the present case, the Commonwealth need not always present evidence relating a suspects BAC results back to the time of driving. Where a strong inference of guilt exists, such evidence may be sufficient to convict a person of driving while intoxicated.

In the present case, appellant's BAC was 0.21% and the test was taken approximately fifty minutes after appellant was found lying on the roadway. The Commonwealth presented no evidence attempting to relate the BAC results back to the time appellant was operating the automobile.[2] Nonetheless, we determine that such evidence, under the facts of this case, was not necessary to prove that appellant was operating a vehicle while his BAC was 0.10% or greater.

2. Indeed, the Supreme Court's pronouncements in *Jarman* and *Modaffare* were not handed down until almost one year after trial in this matter.

First, we note that appellant's BAC was over twice the legal limit. We deem this amount a substantial departure from the legal limit thereby creating a stronger inference that appellant's BAC was over the legal limit at the time he was operating the car. The fifty minute lapse between the time the officers found appellant and the time when his blood sample was taken is long. Moreover, the evidence does not indicate the exact time when appellant operated his vehicle.[3] Nonetheless, in light of the frigid temperature of four degrees below zero Fahrenheit that night, appellant could not have been at the scene laying on the road for a substantial period of time. There was no evidence that he was suffering from any effects of cold weather (*i.e.,* frostbite, hypothermia). Also, Officer Pecora stated that he was on duty from 11:00 p.m. the previous night until 7:00 a.m. that morning and patrolled the location of the incident. Pecora indicated that appellant's truck was not parked on the roadway before he responded to the call at 5:20 a.m. Given the substantial deviation appellant's BAC was from the legal limit, we find that the Commonwealth sufficiently proved its case without adducing expert evidence relating back appellant's BAC to the time of driving. *See Commonwealth v. Mukina,* 422 Pa.Super. 455, 619 A.2d 766 (1993) (Commonwealth was not required to relate blood alcohol content results to the time of driving where the blood alcohol test was administered one hour after the defendant was driving and his blood alcohol content of 0.204% deviated substantially from the requisite 0.10% necessary for conviction).

 Appellant next contends that the lower court erred in allowing evidence of appellant's statements to be admitted

---

**3.** Appellant testified at trial that he had his last drink at approximately 12:30 that morning and began to drive home. He stated that during his drive he became dizzy, pulled off the road and got out of the truck. Although appellant's testimony is uncontradicted, the jury did not believe this evidence, as was its sole right to do. *Commonwealth v. Griscavage, supra.* If one were to give credence to appellant's claim that he was lying on the berm of the road for approximately four and one half hours, it must be assumed that given his excessive BAC and the severe cold weather experienced that night, he would have been transported away in a hearse, rather than in a patrol car.

prior to the Commonwealth establishing the *corpus delicti* of the crime of driving while intoxicated. This rule prohibits the introduction of statements made by a defendant before independent evidence establishing the crime is introduced. *Commonwealth v. DeLeon*, 276 Pa.Super. 36, 39, 419 A.2d 82, 84 (1980). The corpus delicti is established upon evidence of (1) the occurrence of the specific kind of injury or loss; and, (2) someone's criminality as the source of loss. *Id.* at 40, 419 A.2d at 84. If the independent evidence points to an unlawful act, the Commonwealth need not affirmatively exclude the possibility of an accident in order to establish the corpus delicti. *Id.* Contrary to appellant's assertion, the injury or loss need not be tangible. Rather, in order to establish the *corpus delicti* of the crime of driving while intoxicated, the Commonwealth need only show that someone operated a motor vehicle while under the influence of alcohol. *Id.*

In the case *sub judice*, Officer Pecora testified that he found appellant lying on the side of the roadway next to his pickup truck. No one else was near the scene where appellant was found. Officer Pecora then testified that appellant smelled of alcohol and seemed highly intoxicated. This evidence, like that in *DeLeon*, is consistent with the fact that someone operated a motor vehicle while intoxicated. Only after this evidence was presented did the Commonwealth offer appellant's statement that he had been drinking and driving. We can therefore afford appellant no relief on this claim.

Judgment of sentence affirmed.