625 A.2d 1221

**COMMONWEALTH of Pennsylvania**

**v.**

**David Keith PROCTOR, Appellant.**

Superior Court of Pennsylvania.

Argued March 9, 1993.

Filed June 3, 1993.

528

Samuel W. Milkes, Carlisle, for appellant.

Alison Taylor, Asst. Dist. Atty., Carlisle, for Com., appellee.

Before CIRILLO, POPOVICH and HESTER, JJ.

HESTER, Judge:

David Keith Proctor appeals from the judgment of sentence of thirty days to twenty-three months imprisonment imposed after he was found guilty at a jury trial of driving while under the influence of alcohol, incapable of safe driving and driving while under the influence of alcohol with a blood alcohol content of .10% or greater. We conclude that appellant's conviction of driving with a blood alcohol content of .10% or greater cannot be sustained due to a lack of relation-back testimony. However, we conclude that his conviction of driving while under the influence of alcohol, incapable of safe driving rests on sufficient evidence. We therefore affirm in part, reverse in part, and remand for resentencing.

The evidence was as follows. Jeffrey George Morrow is employed at the Camp Hill Shopping Mall as a maintenance man and was working the 3:00 p.m. to 11:00 p.m. shift on December 8, 1989. At approximately 10:00 p.m., the mall just had closed, and he was cleaning the windows to one of the mall entrances. He observed a black compact pick-up truck coming toward the mall. The vehicle failed to negotiate a turn, went out of control, crossed over a lane of traffic, went up over a sidewalk, struck a planter, and came to a rest just before it struck the building.

Mr. Morrow approached the truck to admonish the driver, who was appellant. Appellant acknowledged that he had driven improperly and left the area. Mr. Morrow reported the incident and the license plate number of the truck to William Paul Stilo, who is a security officer for the mall. Mr.

Stilo reported the incident to the Camp Hill Police Department, and Officer David Pepperman responded. The two men searched unsuccessfully for the truck from 10:15 to 10:30 p.m.

At approximately 11:00 p.m., prior to leaving work, Mr. Stilo drove through the parking areas to check for anything unusual. He observed a truck with its motor running in the rear parking area. The license plate number of that truck corresponded to the one that was given to Mr. Stilo by Mr. Morrow. Mr. Stilo looked inside the truck and saw appellant asleep, the door ajar, the radio playing, and a can of beer between appellant's legs. Mr. Stilo radioed for police.

Officer Pepperman returned to the mall and with some difficulty, managed to arouse appellant. Appellant, who had alcohol on his breath, fumbled for his driver's license, passing it several times in his wallet even though the license was visible to Officer Pepperman. Officer Pepperman noticed a strong odor of alcohol in the truck. Appellant was arrested and transported to the Cumberland County Central Booking Center where James R. Akers processed him. Officer Akers administered two field sobriety tests; appellant refused to perform a third test and failed the two that he completed. At 12:00 p.m., Officer Akers administered an intoxilyzer test, and appellant's blood alcohol content was .179%. At the time of processing, appellant's gait was unsteady, his speech was slurred, and his eyes were glassy. Appellant also admitted to drinking eight to twelve beers at two different locations. He stated that he had his last alcoholic drink at 7:00 p.m.

Based on this evidence, appellant was convicted both of driving while under the influence, incapable of safe driving, and driving while under the influence with a blood alcohol content of .10% or greater. Appellant contends that neither conviction rests on sufficient evidence.

Initially, we note that our standard of review is clear. In *Commonwealth v. Vanderlin*, 398 Pa.Super. 21, 33, 580 A.2d 820, 827 (1990), we stated:

The law is clear that in reviewing a sufficiency of the evidence claim, we view the evidence in the light most favorable to the verdict winner, and drawing all reasonable

inferences therefrom, we determine whether there is sufficient evidence to establish each element of the crime beyond a reasonable doubt. *Commonwealth v. Griscavage,* 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986); *Commonwealth v. Hunter,* 381 Pa.Super. 606, 610, 554 A.2d 550, 551 (1989). In applying this test, we must evaluate the entire trial record and consider all evidence actually received. *Griscavage,* 512 Pa. at 543, 517 A.2d at 1257.

75 Pa.C.S. S 3731(a) defines the offenses at issue and, provides, in relevant part, that a "person shall not drive, operate or be in actual physical control of the movement of any vehicle while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving; ... or (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater."

■ We address appellant's contentions which relate to both convictions first. He contends that the Commonwealth did not present sufficient evidence that he was operating or in actual physical control of the movement of a motor vehicle at the time of apprehension since when arrested, he was asleep and his truck was parked legally. Appellant, however, has failed to acknowledge the testimony of Mr. Morrow. That testimony establishes that one hour prior to being found asleep in the vehicle, appellant was operating his truck in the parking lot and nearly drove it into the mall building.

■ Appellant also suggests that the Commonwealth failed to establish that he drove the vehicle on a highway or trafficway, which is required under the Motor Vehicle Code to establish a violation of driving while under the influence. He alleges that a parking space located in a shopping area fails to meet that definition. Once again, appellant ignores the testimony of Mr. Morrow, to the effect that appellant drove around the parking lot in the mall one hour prior to his apprehension. A trafficway is defined, in relevant part, as any place any part of which is "open to the public for purposes of vehicular travel as a matter of right or custom." 75 Pa.C.S. § 102.

We recognize that we have held that where it is not clear that a particular parking lot is open to the public, the Commonwealth must establish that it is. *Commonwealth v. Owen,* 397 Pa.Super. 507, 580 A.2d 412 (1990) (parking lot in university park must be established to be open to public). In the present case, however, the evidence established that appellant drove in a parking lot of a mall that is open to the public for shopping. Notes of Testimony, 9/24–25/90, at 5. Thus, there was sufficient evidence for the jury to conclude that the parking area was a trafficway. *See Commonwealth v. Cozzone,* 406 Pa.Super. 42, 593 A.2d 860 (1991) (parking area of condominium complex is trafficway as it is generally open to public); *Commonwealth v. Wilson,* 381 Pa.Super. 253, 553 A.2d 452 (1989) (parking lot to Elk's Lounge is trafficway as it is generally open to the public). This contention fails.

■ Appellant also argues that the evidence was not sufficient to establish that he was under the influence of alcohol to an extent that he was incapable of safe driving. Mr. Morrow testified that at 10:00 p.m., appellant lost control of his car, drove over a sidewalk and a planter, and nearly struck the mall. This occurred one hour before he was observed with a beer in his lap, a strong odor of alcohol on his breath, and slurred speech, an unsteady gait, and glassy eyes. Further, appellant admitted to police that he had consumed eight to twelve beers three hours before he drove to the mall area. In accordance with the above described standard of review, we conclude that this evidence was sufficient to establish that appellant was under the influence of alcohol at 10:00 p.m. to such an extent that he was incapable of safe driving.

■ Appellant also suggests that his conviction under section 3731(a)(4) is infirm under *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992), and *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992), because the Commonwealth failed to produce expert testimony relating back his blood alcohol content to the time that he was driving, which was over two hours prior to when his intoxilyzer test was performed. We are constrained to agree with this contention.

In *Jarman*, a state trooper noticed that one of the head-lights of the defendant's car was extinguished. The defendant was driving steadily within his lane and was not traveling too fast or too slow. The trooper pulled over the defendant's car and detected alcohol on his breath. Appellant's performance on the field sobriety tests was slightly substandard. He was transported to a hospital, and one hour after the defendant exited his vehicle, his blood was drawn. His blood alcohol content was .114 percent.

The Supreme Court observed that in order to be convicted under section 3731(a)(4), one's blood alcohol content *while driving* must be .10 percent or greater. The Court determined that the jury lacked a sufficient basis to convict the defendant under section 3731(a)(4) since the Commonwealth's expert failed to relate back the test results to the time the defendant was driving. The Court based its decision on the fact that the test result barely exceeded the .10 percent level and that the time lapse between the driving and the taking of the sample was not insignificant. The Court also observed that the expert admitted that the laboratory's blood testing equipment had a margin of error of plus or minus 10%, which would have placed the defendant's blood alcohol level as low as .104 percent at the time that the sample was drawn. Finally, the defendant testified that he had his last drink during a time which would have meant that his blood alcohol content was rising between when he was driving and when the sample was drawn. This evidence was not contradicted. The Court concluded that under those circumstances, the inference of guilt was too weak to sustain the conviction under section 3731(a)(4).

In *Modaffare*, the defendant struck a parked car. Two hours after the accident, his blood sample was taken, and he had a blood alcohol content of .108%. The physician who drew the blood sample testified that a person's blood alcohol level fluctuates so that the level rises after drinking until a peak is reached and then declines. He admitted that the defendant's level may have been rising during the time of the accident and when the sample was drawn. Once again, the Court conclud-

ed that the expert testimony on the issue of blood alcohol content at the time that the defendant was driving was ambiguous and left open to speculation whether a violation of section 3731(a)(4) occurred. Specifically, the Court's conclusion rested on the fact that the result of the test exceeded the legal limit by only a very small amount, and the time lapse between when the defendant was driving and when the blood was drawn was significant.

Highly relevant to the present case is the following language, which appears in both opinions:

> In cases where test results show levels of alcohol significantly above 0.10% *and* where blood samples have been obtained soon after suspects have been stopped, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, where, as in the present case, the blood test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was not insignificant, the inference of guilt is weakened.

*Commonwealth v. Jarman, supra*, 529 Pa. at 96, 601 A.2d at 1231 (emphasis added); *see also Commonwealth v. Modaffare, supra*, (where the Court used identical language except that it characterized the two-hour delay between the driving and the extraction of the blood sample as a "significant" delay).

Under *Modaffare*, it is clear that the delay between the time when appellant was seen operating his car and when the blood alcohol content test was taken is significant. Thus, there is no presumption that appellant's blood alcohol levels were in the prohibited range while driving. Furthermore, there was not a shred of evidence presented by the Commonwealth as to when blood alcohol levels rise or fall or whether, based on appellant's admission as to when he last consumed alcohol, his blood alcohol content would have been falling or rising between when he was observed driving and when his test was administered.

It was the Commonwealth's burden to establish beyond a reasonable doubt that appellant's blood alcohol content *while he was driving* was .10% or greater. While appellant's test

results were higher than those in *Modaffare* and *Jarman*, it was not so significant that in the absence of *some* testimony as to fluctuations in blood alcohol readings, we can say that there was sufficient evidence to establish appellant's blood alcohol content at the relevant time. Under the circumstances, the Commonwealth failed to sustain its burden of proof. *See also Commonwealth v. Osborne*, 414 Pa.Super. 124, 606 A.2d 529 (1992) (relation-back testimony required, even though test was taken within an hour of when defendant drove, since .1488 percent was not a substantial departure from .10%). *Compare Commonwealth v. Kasunic*, 423 Pa.Super. 112, 620 A.2d 525 (1993) (where blood alcohol content reading was taken within one hour of driving and over twice the legal limit, no relation-back testimony was required); *Commonwealth v. Mukina*, 422 Pa.Super. 455, 619 A.2d 766 (1993) (blood alcohol content over twice legal limit and taken within one hour of driving; relation-back testimony not required to sustain conviction).

Judgment of sentence reversed. Appellant's conviction of 75 Pa.C.S. § 3731(a)(4) is vacated; his conviction of 75 Pa.C.S. § 3731(a)(1) is affirmed. Case remanded for resentencing. Jurisdiction relinquished.