## Commonwealth v. Barud

C.P. of Allegheny County, no. CC9402512.

*Patty Scheimer, assistant district attorney,* for Commonwealth.

*Joseph E. Vogrin, III,* for defendant.

LITTLE, *J.,* September 19, 1994—

## BACKGROUND

The defendant, David M. Barud, was charged at criminal information no. 9402512 with three violations of

Pennsylvania Motor Vehicle Code: (1) driving under the influence of alcohol or controlled substance, in violation of 75 Pa.C.S. §3731(a)(1); (2) driving under the influence of alcohol or controlled substance, in violation of 75 Pa.C.S. §3731(a)(5); and (3) stop signs and yield signs (a summary offense) in violation of 75 Pa.C.S. §3323.

A pre-trial conference, in accordance with the Pennsylvania Rules of Criminal Procedure was held on May 20, 1994 at which time a trial date was set for July 6, 1994. The defendant, also on May 20, 1994, filed omnibus pre-trial motions: (1) two motions to suppress evidence; (2) motion to quash summary offense; (3) motion to dismiss summary offense; (4) motion to suppress statements; (5) motion in limine; and (6) motion to dismiss (unconstitutionality). On June 3, 1994 the defendant filed a brief in support of omnibus pre-trial motions. On June 22, 1994 the Commonwealth filed a brief in reply to the defendant's omnibus pre-trial motions. On August 1, 1994 the Commonwealth filed a petition to amend criminal information. On August 3, 1994 the Commonwealth filed a supplemental brief in opposition to defendant's omnibus pre-trial motions. On August 19, 1994 the Commonwealth filed a brief in support of petition to amend criminal information. On August 29, 1994 the defendant filed a brief in opposition to Commonwealth's petition to amend criminal information. On July 6, 1994, a hearing was held on the defendant's omnibus pre-trial motions and the following facts were revealed.

## FACTS

Officer Richard Alfred Szurlej, who was employed as a part-time police officer with Reserve Township, Allegheny County, Pennsylvania, testified that while

on routine patrol on December 15, 1993 he observed the defendant, David M. Barud, operating his Chevrolet station wagon in Reserve Township on Spring Garden Avenue. A stop sign on Spring Garden Avenue controls the intersection of Spring Garden Avenue and Mount Troy Road. Officer Szurlej testified that he observed the defendant drive past the stop sign prior to stopping in the intersection of Spring Garden Avenue and Mount Troy Road prior to making a left hand turn onto Mount Troy Road. Office Szurlej followed the defendant for about one quarter of a mile and then activated his lights in an attempt to stop the defendant. The defendant did pull his vehicle to a stop. Officer Szurlej testified that defendant exited his vehicle and stumbled as he got out and walked towards the police vehicle. Officer Szurlej ordered the defendant to return to his vehicle. Officer Szurlej approached the defendant's vehicle and observed that the defendant's vehicle registration and inspection sticker were expired. The officer also noticed and observed that the defendant had a strong odor of alcohol, his eyes were glassy and bloodshot, and that his speech was slurred. Officer Szurlej administered three field sobriety tests which he indicated that the defendant failed. It was testified to that the defendant was actually stopped at 2:20 a.m. and that he was placed under arrest at 2:34 a.m. The defendant was asked to take a blood test, which he consented to, and blood was drawn at 2:55 a.m. with the result being 0.15 percent blood alcohol content. At 3:25 a.m. Officer Szurlej informed the defendant of his constitutional rights (*Miranda* warnings) and after waiver of his *Miranda* rights the defendant admitted to having consumed seven beers between the hours of 7 p.m. and 2 a.m. prior to his arrest.

Sergeant Fred Boory Jr., of the Reserve Township Police Department, testified that Mount Troy Road and Spring Garden Road were Allegheny County maintained roads and that Reserve Township was not responsible

for the traffic control devices and maintenance of the roadways. The defense at the July 6, 1994 hearing did not present any testimony.

## ANALYSIS

### I. *Was the Defendant Lawfully Stopped for Violation of Stop Signs and Yield Signs, 75 Pa.C.S. §3323(b)?*

The defendant initially contends that he did not violate any provision of the Motor Vehicle Code, specifically that he did not run the stop sign at the intersection of Spring Garden Avenue and Mount Troy Road, and thus no probable cause existed upon which a traffic stop could be effectuated. By review of the facts the trial court is of the opinion that the defendant did not properly stop at the aforementioned stop sign which constituted a violation of 75 Pa.C.S. §3323(b). (See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1960); and *Commonwealth v. Kloch,* 230 Pa. Super 563, 327 A.2d 375 (1974).)

The section of the Motor Vehicle Code in question, 75 Pa.C.S. §3323(b), stop signs and yield signs reads as follows:

"b. *Duties at stop signs*—Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control, or regulate traffic, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if none before entering a crosswalk of the near side of the intersection or, if none, then the point nearest the intersection, roadway where the driver has a view of approaching traffic on the intersecting roadway before entering."

The trial court is of the opinion after a review of the facts that the defendant violated section 3323(b)

of the Motor Vehicle Code by entering the intersection without first stopping as is mandated by the statute. The facts show that the defendant stopped his vehicle into the roadway of Mount Troy Road and not at the intersection or the stop sign. Thus, due to the fact that the defendant failed to stop prior to entering the intersection the officer had probable cause to stop and detain the defendant.

II. *Whether the Summary Offense Should Be Quashed Because the Commonwealth May Not Combine Several Criminal Offenses Into a Single Count in a Criminal Information?*

The summary count of the instant information charges the defendant with violation of section 3323 of the Motor Vehicle Code and reads as follows:

"1 Count; Stop Signs and Yield Signs; Summary: The actor drove a vehicle approaching a stop sign and *failed to stop at a point described in this section*; or having stopped, failed to yield the right-of-way to a pedestrian or another vehicle described in this section; or drove a vehicle approaching a yield sign and failed to follow the instructions described in this section, in violation of section 3323 of the Pennsylvania Vehicle Code, in violation of section 3323 of the Pennsylvania Vehicle Code Act of June 17, 1976, 75 Pa.C.S. §3323." (emphasis added)

The defendant contends that the criminal information does not set forth which alleged subsection was violated. Rule 225(5), Pa.R.Crim.P. states that the information shall contain: "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint." A review of the record reveals that the original complaint

filed against the defendant specifically charged the summary offense of "MVC 3323(b); stop signs and yield signs." Thus, the trial court is of the opinion that the criminal information filed in the instant case clearly complies with the Pennsylvania Rules of Criminal Procedure. The charges in the information are clear and explicit and properly puts the defendant on notice as to what he must specifically defend against. Thus, the summary offense is not required to be quashed.

### III. *Whether the Summary Offense Should Be Dismissed Because the Stop Sign Was Illegally and Unlawfully Erected?*

The defendant contends that the stop sign at the intersection of Spring Garden Avenue and Mount Troy Road was erected without a duly enacted ordinance in violation of the Pennsylvania Motor Vehicle Code. The facts reveal that the two roads in question were Allegheny County maintained roads and not the responsibility of Reserve Township. There was no evidence presented at the hearing to indicate that Allegheny County had not complied with all of the provisions of Pennsylvania Motor Vehicle Code in erecting the subject stop sign. Thus, due to the fact that there is no evidence the subject stop sign was illegally and unlawfully erected the summary offense is not required to be dismissed.

### IV. *Whether All Evidence Must Be Suppressed Because Probable Cause Did Not Exist To Arrest Defendant?*

The defendant contends that after his vehicle was stopped for an alleged motor vehicle violation that he was illegally and unlawfully arrested without reasonable

grounds and without probable cause. The defendant argues that the arrest was in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the Constitution of the United States of America as well as the Rules of Criminal Procedure.

A review of the facts reveal that, after the defendant's vehicle was stopped, the defendant exited his vehicle and stumbled as he walked towards the police vehicle. The officer ordered the defendant to return to his vehicle. The officer then approached the defendant's vehicle and upon speaking with the defendant detected an odor of alcoholic beverage coming from the defendant's breath. The officer also observed that the defendant's eyes were glassy and his speech was slurred. The defendant was also asked to perform three field sobriety tests: (1) He was asked to recite the alphabet; (2) to count backwards from 10; and (3) the finger-to-nose test. The officer was of the opinion that the defendant failed the three field sobriety tests. Officer Szurlej testified that based on his training and experience and observations made of the defendant that he was of the opinion that the defendant was under the influence of alcohol and incapable of safe driving. At this point the officer placed the defendant under arrest. The defendant was then advised of his chemical test warnings and he was taken to St. Margaret's Hospital after consenting to submit to having his blood drawn for a chemical test.

The trial court is of the opinion that after a review of the facts in this case that there were reasonable grounds, based on the totality of the circumstances, for a reasonable person to believe that the defendant was operating his vehicle under the influence of alcohol and thus the officer had probable cause to arrest the defendant. Thus, the trial court is of the opinion that the evidence should not be suppressed.

## V. Whether All Statements in the Within Matter Must Be Suppressed Not Only Because of an Illegal Arrest, But Also Because the Defendant Did Not Knowingly, Intelligently and Voluntarily Waive His Miranda Rights?

As previously stated, the trial court is of the opinion probable cause existed for the stop and arrest of the defendant. Thus, the statements do not have to be suppressed because the court rules the arrest was properly effectuated based on probable cause.

The trial court is also of the opinion that the arresting officer did not violate the defendant's constitutional rights in failing to read the *Miranda* warnings prior to the defendant performing various field sobriety tests. A review of the law in Pennsylvania restricts the procedural safeguards of *Miranda v. Arizona,* 384 U.S. 436 (1966) to custodial interrogation, not including ordinary traffic stops. The case of *Pennsylvania v. Bruder,* 488 U.S. 9 at 10, 109 S.Ct. 205 at 206, 102 L.Ed.2d 172 at 174 (1988) held that "ordinary traffic stops do not involve custody for purposes of *Miranda.*"

The case law in Pennsylvania is also clear that field sobriety tests do not elicit testimonial or communicative evidence. See *Commonwealth v. Romesburg,* 353 Pa. Super. 215, 509 A.2d 413 (1986); *Commonwealth v. Benson,* 280 Pa. Super. 20, 421 A.2d 383 (1980). In the case of *Commonwealth v. Fernandez,* 333 Pa. Super 279, 482 A.2d 567 (1984) it was pointed out that Article 1, Section 9 of the Pennsylvania Constitution, providing that an accused "cannot be compelled to give evidence against himself," does not expand the protection against self-incrimination afforded by the Fifth Amendment to the United States Constitution.

As to the statement given by the defendant at the in station interrogation, where the defendant stated that he had consumed seven beers between the hours of 7 p.m. and 2 a.m. prior to his arrest, the trial court is of the opinion that the defendant knowingly, intelligently and voluntarily waived his rights after he was read the *Miranda* warnings. A review of the record reveals nothing to indicate that the defendant was coerced, forced or in any way did not understand the *Miranda* warnings. There is nothing in record of this case to indicate that *Miranda* warnings read to the defendant at the police station were inaccurate or confusing. Thus, the trial court is of the opinion that the statement should not be suppressed.

## VI. *Whether the Defendant's Motion in Limine Should Be Granted Because the Feats Administered Should Be Excluded Because No Degree of Uniformity Exists That They Are Antiquated and Unreliable and No Threshold Standard of Reliability Can Be Ascertained?*

The defendant contends that the trial court should grant a motion in limine excluding testimony at trial as to evidence of the field sobriety tests administered by Officer Szurlej at the time of stopping the defendant. The defendant argues that to allow such evidence would deny the defendant due process and the right to a fair trial, that no degree of uniformity exists and no threshold standard of reliability can be ascertained as to field sobriety tests administered.

A review of case law in Pennsylvania reveals that intoxication is a matter of common observation and knowledge and with a foundation of proper observation and experience, opinions of non-expert laymen are ad-

missible and probative. (See *Commonwealth v. Horn,* 395 Pa. 585, 150 A.2d 872 (1959) and *Commonwealth v. Neiswonger,* 338 Pa. Super. 625, 628, 488 A.2d 68, 70 (1985).) It is also noted the courts in Pennsylvania accepted field sobriety tests as relevant evidence in the prosecution of driving under influence cases. (See *Commonwealth v. Hunsinger,* 379 Pa. Super. 196, 549 A.2d 973 (1988); *Commonwealth v. Miller,* 367 Pa. Super. 359, 532 A.2d 1186 (1987).) The trial court is of the opinion that due to the fact that field sobriety tests have been previously ruled as admissible in the Pennsylvania courts the defendant's contention that the field sobriety tests are unreliable must fail. Thus, the defendant's motion in limine is to be denied.

VII. *Whether 75 Pa.C.S. §3731(a)(5) Is Unconstitutional?*

Defendant, David Barud has challenged the constitutionality of 75 Pa.C.S. §3731(a)(5). It is the defendant's contention that this section violates his constitutional rights to due process of law as guaranteed by the Fifth Amendment of the Constitution of the United States of America and Article I, Section 9 of the Constitution of the Commonwealth of Pennsylvania.

1. The Statute

75 Pa.C.S. §3731(a)(5) reads as follows:

"(5) if the amount of alcohol by weight in the blood of the person is 0.10 percent or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is:

"(i) obtained within three hours after the person drove, operated or was in actual physical control of the vehicle; or

"(ii) if the circumstances of the incident prevent collecting the sample within three hours, obtained within a reasonable additional time after the person drove, operated or was in actual physical control of the vehicle."

In conjunction with the enactment of subsection (a)(5), subsection a.1 was enacted as follows:

"(a.1) Defense.—It shall be a defense to a prosecution under subsection (a)(5) if the person proves by a preponderance of evidence that the person consumed alcohol after the last instance in which he drove, operated or was in actual physical control of the vehicle and that the amount of alcohol by weight in his blood would not have exceeded 0.10 percent at the time of the test but for such consumption."

## 2. Defendant's Contentions

Defendant asserts that, the foregoing section, when read in conjunction with 75 Pa.C.S. §1547, violates both his State and Federal Constitutional rights for the following reasons: (a) the statutory language creates a mandatory, irrebuttable presumption pertaining to an essential element of the offense. *Francis v. Franklin,* 471 U.S. 307 at 313 (1985); *Commonwealth v. Sattazahn,* 428 Pa. Super. 413, 631 A.2d 597 (1993); (b) the statute unlawfully allows the Commonwealth to use evidentiary presumptions in a jury charge that have the effect of relieving the Commonwealth of its burden of persuasion beyond a reasonable doubt of every essential element of the crime. See also, *County Court of Ulster County v. Allen,* 442 U.S. 140 (1979); *Sandstrom v. Montana,* 442 U.S. 510 (1979). Contrast *Commonwealth v. Hernandez,* 339 Pa. Super. 32, 488 A.2d 293 (1985); (c) the statutory language creates an impermissible inference because a reasonable juror cannot understand the language as creating other than a man-

datory presumption; and (d) the statutory language relies upon an impermissible series or pyramiding of inferences. Defendant further contends that the language of section 3731(a)(5) allows the Commonwealth to use evidentiary presumptions in a jury charge which effectually relieves the Commonwealth of its burden of persuasion beyond a reasonable doubt of every essential element of the crime. It also creates an impermissible inference because a reasonable juror cannot understand the language as creating anything but a mandatory presumption and the statutory language relies upon an impermissible series or pyramiding of inferences.

It appears that the defendant's position raises issues of merit.

The defendant also argues that the statute is unconstitutional because it does not require proof of the following: (a) that the true blood alcohol, presisely and validly, is determined at the time of the operation of the motor vehicle; (b) that the blood alcohol precisely and validly correlates to the amount of brain alcohol causing impairment of physical and mental functions consistent with the operation of the motor vehicle; (c) that the brain alcohol concentration at the time of the operation of the motor vehicle correlates with the degree of population as opposed to "self-compared" driving impairment; (d) that the defendant's operation of the motor vehicle was impaired to fit within the statutory definition of driving impairment as caused by alcohol; (e) the Pennsylvania statute, as written, requires no proof of such relationship and does not recognize the connection between the test results and the facts relating to being under the influence of alcohol and, more importantly, the impairment of the operation of the motor vehicle; (f) additionally, it is averred that the Pennsylvania statute is unconstitutional in that the crime, as worded, bears no reasonable relationship to any recognizable societal interests, when it cannot be proven

that any particular motorist is under the influence of alcohol to such an extent as to impair his operation of the motor vehicle by the mere introduction of blood test results; (g) the three hour time period is arbitrary, capricious, and bears no relationship to scientific principles which have proven to be reliable and have gained scientific acceptance within the scientific community; (h) the Commonwealth need not prove the exact blood alcohol level at the time of operation. *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992); *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992); *Commonwealth v. Osborne,* 414 Pa. Super. 124, 606 A.2d 529 (1992); *Commonwealth v. Proctor,* 425 Pa. Super. 527, 625 A.2d 1221 (1993); (i) the statute, under the guise of regulating driving while intoxicated, is prohibiting public or non-public intoxication within three hours of operation or within such additional reasonable period of time; (j) the statute prohibits non-criminal, innocent behavior and the means used by the statute, *i.e.,* intoxication after operation, is not reasonably related to the state's policepower to protect the public health, safety and welfare; (k) such statute is overbroad due to vagueness and such "standardless" statute permits arbitrary and discriminatory law enforcement by police, prosecutors and juries; (l) additionally, such statute impermissibly shifts the burden of proof of a defense of such unconstitutional statute to the person so charged in violation of his privilege against self-incrimination and that basic Anglo-American policy that the prosecution has the burden of proving beyond a reasonable doubt all the facts necessary to establish the defendant's guilt; indeed, such statute not only relieves the Commonwealth of producing evidence of defendant's intoxication at time of operation, but also relieves the Commonwealth of persuading the jury beyond a reasonable doubt of the existence of such criminal activity; (m) furthermore, the statute is unconstitutional

because intoxication three hours after operation is not driving while intoxicated, and is not unlawful, though it may be public intoxication; thus, the legislature may not impermissibly shift such burden of proof because intoxication three hours after operation may or may not be unlawful; (n) it is not permissible under *Paterson v. New York,* 429 U.S. 877 (1976), to shift the burden of proving non-intoxication at time of operation to a defendant because the very basis of the statute is to prohibit "driving while intoxicated," not being intoxicated three hours after driving or operation.

3. General Review and Analysis of Statute

a. *Generally*

The General Assembly recently amended Motor Vehicle Code §3731 by the addition of subsection (a)(5). The defendant contends that the new law is unconstitutional.

b. *History*

In response to a public outcry over the increased deaths and injuries caused by drunken driving, the General Assembly acted at the end of 1982 to amend section 3731 of the Motor Vehicle Code by, inter alia, adding subsection (a)(4), the law which created an offense for driving with a blood alcohol level of 0.10 percent or greater without any proof regarding the effects of alcohol. At the same time, the penalty for refusal to submit to chemical testing was enhanced by amendment to Motor Vehicle Code §1547. Thereafter, Pennsylvania driving under the influence cases were prosecuted under subsections (a)(1) and (a)(4) in combination where chemical test results were available. Early on, questions were raised concerning the sufficiency of a blood alcohol content reading of a breath or blood sample taken at

a later time to prove the blood alcohol content level at an earlier time of driving. The statute defines driving offenses and specifically, subsection (a)(4) prohibits driving while the blood alcohol level is 0.10 percent or greater.

There were some early court decisions, including *Commonwealth v. Speights,* 353 Pa. Super. 258, 509 A.2d 1263 (1986), which held that it was sufficient for the prosecution to present the results of a chemical test without relating the results back to the time of driving by expert testimony or otherwise. Matters continued that way for 10 years, until the issue was considered by the Supreme Court of Pennsylvania. In the cases of *Commonwealth v. Jarman, supra* and *Commonwealth v. Modaffare, supra,* the Supreme Court declared that the burden of proof of the prosecution under (a)(4) included "relating back" a blood alcohol result to the time of driving, operating or being in actual physical control of a vehicle in a case where the reading did not represent a significant departure above 0.10 percent blood alcohol. The Supreme Court did not define "significant departure" and the particular cases before it concerned readings of between 0.11 and 0.12. Subsequently, in *Commonwealth v. Osborne, supra,* the Superior Court of Pennsylvania said that a blood alcohol reading of 0.148 percent was not a substantial departure and that the Commonwealth was required to relate back to the time of driving. The *Jarman* and *Modaffare* decisions acknowledged the fact that a blood alcohol content test result of a sample taken at a significant time after driving only represented the blood alcohol content at the time of taking of the sample and that the blood alcohol content at the time of driving could have been higher, lower or about the same and that in cases where the blood alcohol content was not so high as to eliminate any question, the Commonwealth had the burden to present evidence to establish what the blood alcohol

content was at the time of driving. Those courts specifically held that a violation of the statute "occurs only when a person's blood alcohol content is equal to or exceeds 0.10 percent while he/she is driving." See *Osborne, supra.*

Prior to 1982, the chemical test result was used as only one item of evidence for the purpose of proving that a person was driving "under the influence." Under subsection (a)(4), since 1982 it has not been necessary to prove that an accused was "driving under the influence" but merely that the person had a blood alcohol content of 0.10 percent or greater, regardless of the evidence regarding influence of the alcohol on the accused and certainly without regard to whether that made the person incapable of safe driving. The actual fact is that, since there is no uniformity regarding the time for the collection of the breath or blood sample, in some cases one person passes when tested by chance one hour after driving and would have flunked if tested 30 minutes after driving while another flunks when tested one hour later and would have passed if tested 30 minutes after driving because of the difference of rising or falling blood alcohol content. These are physical facts which were acknowledged by the Supreme Court in *Jarman* and *Modaffare* and which cannot be ignored. However, the General Assembly chose to ignore those physical facts and to skirt the statements of the Supreme Court by passing a new law under which the defendant here is charged. The enactment of section (a)(5) is clearly in reaction to the Supreme Court's holding in *Jarman* and *Modaffare.*

### c. *Analysis of statute*

The analysis of this statute begins with acknowledgement of the existence of a presumption of constitutionality and a heavy burden of persuasion upon

the challenger. Further, it is acknowledged that the legislature may limit the enjoyment of personal liberty and property in the exercise of the police power for the purpose of preserving the public health, safety and welfare. Further, no one champions the cause of drunken driving and the carnage on the highways. It is agreed by all that the appropriate exercise of the police power in the areas of highway safety and the use of alcohol are absolutely necessary.

What is at issue here is whether the General Assembly has gone beyond its limits in enacting this amendment to section 3731.

The review of any Pennsylvania statute must be done in accord with the Statutory Construction Act of 1972, 1 Pa.C.S. §1501 et seq. The following parts of some sections of that law are especially important in our review:

Section 1921(a)—The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

Section 1921(b)—When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

Section 1922—It is presumed that the General Assembly intends the entire statute to be effective and certain.

Section 1924—The title and preamble of a statute may be considered in the construction thereof. The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered

to control but may be used to aid in the construction thereof.

Section 1928—All penal provisions shall be strictly construed.

### 4. Analysis of Statute As to Constitutionality

The starting point of an analysis to determine the constitutionality of a statute is whether it creates a statutory inference or an impermissible criminal statutory presumption.

In *Commonwealth v. DiFrancesco,* 458 Pa. 188, 329 A.2d 204 (1974), the characteristics of both inferences and presumptions were explained:

"[W]here the presumed fact comprises an element of the crime charged, the inference authorized by a presumption can never be compelled by the court. See generally, *Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974)....

"Of course a permissible inference may affect the burden of production in the practical sense that it increases the risk that a defendant who fails to produce countervailing evidence may suffer an adverse verdict. In this sense, the evidence forming the basis of a statutory inference functions no differently from the other evidence in the prosecution's case: the stronger the evidence against a defendant the greater will be the pressure on him to come forward with evidence in his own defense. It is in this loose, practical sense that courts and legislatures occasionally speak of shifting a burden to the defendant in a criminal case." *Id.* at 193-194 n.3, 329 A.2d at 208 n.3.

In *Commonwealth v. Hernandez, supra* the court stated:

"[There is a] strong presumption of constitutionality and the heavy burden of pursuasion (sic) upon one who challenges the constitutionality of an Act of the

General Assembly. *Snider v. Thornburgh,* 496 Pa. 159, 166, 436 A.2d 593, 596 (1981); *Commonwealth v. Barnes and Tucker Co.,* 472 Pa. 115, 123, 371 A.2d 461, 468 (1977), *appeal dismissed,* 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977). Accordingly legislation will not be declared unconstitutional unless it 'clearly, palpably and plainly' violates the constitution. *Snider v. Thornburgh, supra; Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 16, 331 A.2d 198, 203 (1975). *Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983)." *Id.* at 37-38, 488 A.2d at 296.

In *Snider v. Thornburgh, supra,* our Supreme Court identified "what is perhaps the most fundamental principle of statutory construction: the presumption that the legislature has acted constitutionally. This presumption 'reflects on the part of the judiciary the respect due to the legislature as a co-equal branch of the government.' *School District of Deer Lakes v. Kane,* 463 Pa. 554, 562, 345 A.2d 658, 662 (1975)." *Id.* at 166, 436 A.2d at 596. A heavy burden rests on those who would attack the judgment of the representatives of the people. This is true in part because the constitutional test is intertwined with an assessment of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards.

Every penal statute must be strictly construed; this is particularly true when the statute imposes strict liability. (See *Commonwealth v. Ashford,* 263 Pa. Super. 100, 397 A.2d 420 (1979).) The rule is that a penal statute must be strictly construed in favor of the defendant. The rationale behind strict construction of a penal statute is the injustice of convicting a person without clear notice to him that his contemplated conduct is unlawful. *Commonwealth v. Broughton,* 257 Pa. Super. 369, 390 A.2d 1282 (1978).

The evil to be addressed by this penal provision (3731(a)(5)) is an offense committed on the highways and trafficways of the Commonwealth—*a driving offense*. It is not the purpose of this law to address the consumption of alcohol alone. This law does not attempt to make the consumption of alcohol illegal.

Further, it does not intend to make driving after the moderate consumption of alcohol illegal. As an amendment to the existing section 3731, it does not have a purpose of changing what has become known as the "legal limit" for, if that were its purpose, the section would be required to refer to a blood alcohol percentage other than 0.10, which is already part of the existing law.

The purpose of the enactment of subsection (a)(5) as an amendment to section 3731 is obvious. Its purpose is to relieve the prosecution of the burden of proof which the Supreme Court declared in *Jarman* and *Modaffare*. The two large urban counties of Pennsylvania, Philadelphia and Allegheny, are capable of carrying the burden of section 3731(a)(4) without the change brought about by subsection (a)(5). The other 65 counties, or some of them, probably find more difficulty in having expert witnesses accessible to fill the requirement. Unfortunately, the legislature-not only has gone far beyond its limits, but also it has enacted a law which does not accomplish the intended purpose, is not a valid exercise of the police power, does not attack the evil which is the subject of section 3731, affects different people in a randomly unfair manner, eliminates a standard by which criminal conduct may be measured and thereby fails to give notice to the public of the conduct proscribed.

The trial court is of the opinion the statute does not relate to the time "while a person is driving, operating or being in actual physical control of the move-

ment of a vehicle." The object of section 3731 is clear. It is to prevent or deter people driving vehicles on public highways or trafficways when they are impaired by alcohol consumption. The purpose is not to simply prevent alcohol consumption. Nevertheless, in a prosecution under subsection (a)(5), whether or not a person was impaired from alcohol consumption at the time of driving or what that person's blood alcohol content was while driving is totally irrelevant. In fact, the prosecutor could stipulate with the defense attorney that when the defendant was driving his blood alcohol level was indeed below 0.10 percent and that the defendant was not "under the influence of alcohol to a degree rendering him incapable of safe driving," but the defendant could still be guilty under this statute. A person would be guilty under this statute even if he consumed no alcohol until after he ceased driving but had a blood alcohol content of 0.10 percent thereafter. The fact that a defense may be available under new subsection (a.1) does not relieve the fact that the wording of the statute does not concern itself with the person's condition at the time of driving. Because of this, the statute is unconstitutional for not bearing a rational relationship to the purpose to be served, for exceeding the permissible exercise of the police power, for having no valid purpose, and for violating equal protection.

The trial court is also of the opinion the statute eliminates a necessary element—a critical time of relevance of a person's blood alcohol content. It is necessary to read this section of the statute carefully in order to realize its major failing. It does *not* establish a presumption that a person's blood alcohol content was over 0.10 percent at the time of driving based on a later reading. (Prior to *Jarman* and *Modaffare,* that was the effect of the *Speights* case.)

With acknowledgment that when people consume alcohol over some period of time, they experience a

period of absorption of the alcohol into the blood stream, then a period of the combination of simultaneous absorption and dissipation and, finally, a period of dissipation only, comes the understanding that the classification of people who will be guilty under this law includes people whose blood alcohol content at the time of driving, operating or being in actual physical control of a vehicle was under 0.10 percent and, further, that the classification will not include a number of people whose blood alcohol content at the time of driving, operating or being in actual physical control of a vehicle was under 0.10 percent and, further, that the classification will not include a number of people whose blood alcohol content at the time of driving, operating or being in actual physical control of a vehicle was over 0.10 percent. Stated again another way, this amendment eliminates the uniformity providing equal protection by removing a critical time element from the statute, *i.e.,* the time of driving, operating or being in actual physical control of a vehicle.

Another rule of statutory construction is that it is presumed that the legislature did not intend an absurd result. This statute cannot be rationalized to operate reasonably. It is not only that the time of driving is no longer significant for the measurement of the blood alcohol content, but that for many tests, a three hour period will not be relevant. Defendant does not here challenge the authority of the legislature under the police power to define a period of time after driving when a sample may be taken for chemical testing, but this statute does not concern itself with the person's blood alcohol content even during that three hour period necessarily.

The trial court finds that the statute focuses on the person's blood alcohol content at the time of a chemical test of a sample. With regard to the practice in other

counties, it is well known that in Allegheny County all blood samples are taken in local hospitals and the samples are then later transported to the Allegheny County Department of Laboratories where they are tested many hours, and sometimes a few days, after the sample was collected.

This amendment makes the critical time *the time of the chemical test*. The law states that the person is guilty of an offense if the alcohol by weight in the blood of the person is 0.10 percent or greater at the time of the test of the sample as opposed to the time of driving or the time of collecting the sample. In section 3731 and in all laws relating in any way to a person's blood alcohol content, it is clear that the laws are concerned with the alcohol content in the blood which is in the person. At the time a blood sample is collected, the alcohol in that sample and the alcohol in that person are the same. Thereafter, the alcohol level in the blood in the person changes and, assuming no further alcohol consumption, eventually is totally eliminated. It is likely that by the time of the chemical test of a sample of the person's blood, the blood in the person contains no alcohol. This part of the statute is so poorly drafted that it is completely irrational.

Section 1921(b) states that, when the words of the statute are clear and free from all ambiguity, the letter of it is to be disregarded under the pretext of pursuing its spirit. The temptation may be to say that we know what the legislature meant even though it didn't articulate correctly. This Statutory Construction Act does not permit that when the words are clear, which they appear to be here. The trial court concludes that the statute is ambiguous, and thus the statute is unconstitutional due to being overbroad and vague. Section 1928 requires strict construction.

The trial court is of the opinion after a reading of the subject statute that there is no defense related to driving. By eliminating the former uniform critical time and not replacing it with any rational substitute, this amendment has eliminated the possibility of a person's presenting a defense regarding the driving. Previously if a prima facie case of driving under the influence or being over 0.10 percent at the time of driving were made, an accused had the opportunity to present a defense by factual evidence and/or by expert testimony. This amendment acts to eliminate the defense and declare guilt even though a person can prove that he was not under the influence and/or did not have a blood alcohol content of 0.10 percent or greater at the time of driving, operating or being in actual physical control of a vehicle. This amendment appears to provide a defense under subsection (a.1) but that defense would only be available to a person who could prove that he drank after he drove and then only to the extent that he could prove that the alcohol that he consumed after he ceased driving was responsible for causing his blood alcohol to be over 0.10 percent sometime later. This eliminates the consideration of alcohol which may have been consumed by the person prior to driving but not yet absorbed as of the time he ceased driving. The law chooses to ignore the science of toxicology. Because it finds it burdensome for the prosecution, this law just pretends that certain physical facts which exist do not exist, such as consumed but unabsorbed alcohol and absorption and dissipation time patterns. In other words, this law essentially says that even if you can prove that your blood alcohol content was 0.05 percent at the last instant of driving, you are guilty because the legislature has chosen to ignore that fact for the good of the common cause.

The stated "defense" is not a defense at all for a person where there is consumed but unabsorbed alcohol and is only a defense for a person who has consumed alcohol after driving. Clearly the rationale is that there is a "gray area" here in relating a blood alcohol content back to the time of driving and so we are going to take that burden away from the prosecution.

If the legislature chose to make a law that said that a person may not drive at a time when there is alcohol in the person's blood in any quantity, that law would not be subject to this attack on its constitutionality. The legislature hasn't chosen to do that and is therefore saying that drinking and driving is not a crime. In this area of the law as in many other areas of criminal law enforcement, there are some cases where the proofs are more difficult than others. For instance, in a case where a person drank some alcohol then drove a vehicle and then drank some more alcohol and then without driving again was arrested and had a blood alcohol content in excess of 0.10 percent, subsection (a)(5) and (a.1) would declare that the person is guilty of violation of (a)(5) and that he is not permitted to defend himself unless he can prove that the alcohol he consumed after driving was the cause of his being over 0.10 percent, without regard to any unabsorbed alcohol which had been consumed before driving since the blood alcohol level at the time of driving is irrelevant.

The trial court is further of the opinion that section (a)(5) fails in its purpose because it exceeds the limits of the police power for all the reasons hereinbefore stated. All of the failings of this statute cause it to be unconstitutional for a deprivation of due process of law of an accused person. The trial court is further of the opinion that section 3731(a)(5) is unconstitutionally vague and overbroad, in violation of the Fourteenth Amendment to the United States Constitution.

A statute is unconstitutionally vague where it fails to provide reasonable notice of the conduct to the person charged with violating its prohibitions. *Commonwealth v. Heinbaugh,* 467 Pa. 1, 5, 354 A.2d 244, 246 (1976); *Commonwealth v. Tavares,* 382 Pa. Super. 317, 324, 555 A.2d 199, 202 (1989), *appeal denied,* 524 Pa. 619, 571 A.2d 382 (1989); *Commonwealth v. Westcott,* 362 Pa. Super. 176, 195, 523 A.2d 1140, 1149 (1987), *appeal denied,* 516 Pa. 640, 533 A.2d 712 (1987). Where the terms of the statute are so vague that "persons of common intelligence must necessarily guess at its meaning and differ as to its application," the statute will be violative of due process. *Commonwealth v. Sanders,* 380 Pa. Super. 78, 94, 551 A.2d 239, 247 (1988), *appeal denied,* 522 Pa. 575, 559 A.2d 36 (1989), quoting *Fabio v. Civil Service Commission,* 489 Pa. 309, 414 A.2d 82 (1980).

"[T]he specificity of a statute must be measured against the conduct in which the party challenging the statute has [been] engaged," and in view of the specific facts of the case before us. *Commonwealth v. Heinbaugh, supra* at 4-5, 354 A.2d at 245, citing *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). Thus, "one to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Commonwealth v. Tavares, supra* at 324, 555 A.2d at 202, quoting *Hoffman Estate v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

A statute is overbroad where its language prohibits constitutionally protected conduct. *Commonwealth v. Stenhach,* 356 Pa. Super. 5, 25, 514 A.2d 114, 124 (1986), *appeal denied,* 517 Pa. 589, 534 A.2d 769 (1987) (where law criminalizing hindrance of prosecution as applied to criminal defense attorney implicated fourth,

fifth and sixth amendments, statute was unconstitutionally broad). Where First Amendment rights are not involved, a litigant may not attack the facial overbreadth of a statute unless his or her own rights are directly affected by the asserted overbreadth. *Commonwealth v. Stock,* 346 Pa. Super. 60, 66, 499 A.2d 308, 311 (1985), *appeal denied.*

### 5. Conclusion As to Unconstitutionality

This section is as defendant states vague and overbroad. An overbroad statute violates substantive due process when it deprives a person of a constitutionally protected interest through means which are not rationally related to a valid state objective because they sweep unnecessarily broadly. *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

While a legitimate state interest, safety on the state highways, has been articulated by the legislature in creating the law, the means stated in section 3731(a)(5) are not rationally related to achieving that end. How is a citizen to know when their lawful action (drinking and driving) ripens into criminal conduct? How can one predict when and whether a 0.10 percent alcohol level will be reached within three hours of driving? The prosecutor need not prove beyond a reasonable doubt that defendant was under the influence of alcohol or drugs at the time of the operation of the vehicle. Thus the section not only sweeps broadly and encompasses both lawful and unlawful conduct but also is so vague as not to provide guidelines to people of common intellect to determine when they will reach the prohibited alcohol level. This aspect indeed appears to violate due process.

The trial court is further of the opinion that section (a)(5) is not a rational response to a public need. It is a quick reaction to a very appropriate decision of the Supreme Court of Pennsylvania, which defined the burden of proof in a certain number of cases under section 3731, those where the blood alcohol content reading does not significantly exceed 0.10 percent. The legislature may have acted rather hastily since there have been other decisions of the Pennsylvania Superior Court since the time of *Osborne, supra.* For example, there is the case of *Commonwealth v. Kasunic,* 423 Pa. Super. 112, 620 A.2d 525 (1993) where the Superior Court held that it was not necessary for the prosecution to present expert testimony to relate back a blood alcohol content of 0.21 percent, and the case of *Commonwealth v. Loeper,* 423 Pa. Super. 32, 620 A.2d 25 (1993) where the Superior Court discussed *Osborne, supra,* but distinguished it since in this case there was a blood alcohol content of 0.141 percent but also other evidence which relieved the need for expert testimony. It remains to be seen what will develop.

For the reasons stated, the trial court declares section 3731(a)(5) and (a.1) unconstitutional and dismisses Count II in the criminal information against defendant.

## VIII. *Whether the Commonwealth's Petition To Amend Criminal Information Should Be Granted*

On December 13, 1993 the Commonwealth filed a complaint against the defendant charging him with driving under the influence 3731(a)(1), driving under the influence 3731(a)(5) and one count of motor vehicle violation section 3323(b). After a preliminary hearing on February 24, 1994 the defendant was held for court on the aforementioned charges. The defendant was formally arraigned on April 27, 1994 on the same charges. A pre-trial conference was held on May 20, 1994 with

a trial date being set for July 6, 1994. On July 6, 1994 the court held a hearing on various pre-trial motions filed by the defendant which included a constitutional challenge to Count 2 of the information 3731(a)(5). The trial court after taking testimony ordered briefs to be submitted. On August 1, 1994 the Commonwealth filed its motion to amend the information to include violation of section 3731(a)(4) of the Pennsylvania Motor Vehicle Code.

The trial court is of the opinion that the Commonwealth should be precluded from amending the information at this stage of the proceedings. It is the court's position that the Commonwealth could have amended the complaint at the preliminary hearing, did not charge the requested amendment in the criminal information after completing its pre-trial screening of the case, that the Commonwealth delayed filing the petition to amend until after omnibus pre-trial motions were filed challenging the constitutionality of section 3731(a)(5), delayed the filing of the petition to amend even though extensive briefs had been prepared by both sides, and that the petition to amend was not filed until after the conclusion of hearings on the omnibus pre-trial motions. The court is of the opinion that to allow an amendment at this late stage in the proceedings would complicate the case and prejudice the defendant. The court is further of the opinion that the petition to amend the criminal information is in response to the defendant's proposed constitutional challege to section 3731(a)(5) of Pennsylvania Motor Vehicle Code. Therefore, the Commonwealth's motion to amend the criminal information is to be denied.

## CONCLUSION

Based on the above analysis all of the defendant's omnibus pre-trial motions are denied, with the exception

of the defendant's motion to dismiss Count II of the criminal information on the basis that section 3731(a)(5)(i) is unconstitutional which is granted. The Commonwealth's motion to amend the information is also denied.