J-S79008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE BRICE WALKER | : | |
| | : | |
| Appellant | : | No. 848 MDA 2018 |

Appeal from the Judgment of Sentence February 6, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002884-2017

BEFORE: SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED APRIL 15, 2019**

Appellant, Andre Brice Walker, appeals from the judgment of sentence entered following his convictions of various firearms, narcotics, and motor vehicle violations related to a traffic stop. Appellate counsel has filed a petition seeking to withdraw his representation and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), which govern a withdrawal from representation on direct appeal. We grant counsel's petition for leave to withdraw and affirm.

The trial court set forth a detailed factual history of this case as follows:

On Friday, May 26, 2017, Appellant lent his vehicle ("Appellant's Vehicle") to his friend, Alexis Woods[10] ("Ms. Woods"), to run some errands while her car was in the shop. N.T. at 94-96, 107. On that date, Ms. Woods was the registered owner of a 9 millimeter Ruger firearm ("the Firearm"). N.T. at 95. Ms. Woods placed the Firearm inside of Appellant's Vehicle. N.T. at 95, 108. Ms. Woods put the Firearm's loaded magazine inside of the glove box and put the Firearm inside of a bag located in the

trunk. N.T. at 97, 108. The Firearm was not scratched and the serial number was able to be read when Ms. Woods put the Firearm into Appellant's Vehicle. N.T. at 101-102, 105. Ms. Woods intended to go to a range to shoot the Firearm but, due to an incident with her son, did not get to the range and returned Appellant's Vehicle to Appellant. N.T. at 95-97, 112-113. When Ms. Woods returned Appellant's Vehicle, Appellant and his associates entered Appellant's Vehicle and Appellant transported Ms. Woods to get cigarettes and then to her residence. N.T. at 96, 97-98, 109-117, 152. Ms. Woods did not remove the Firearm from Appellant's Vehicle. N.T. at 96, 114. At no time did Ms. Woods drive Appellant's Vehicle to Panera Bread or the Boscov's Outlet Center in Exeter Township, Reading, Pennsylvania. N.T. at 98.

[10] Alexis Woods is also known by her married name, Alexis Lockett. N.T. at 93, 151.

On Saturday, May 27, 2017, at 3:24 a.m., Officer Christopher Miller of the Exeter Township Police Department ("Officer Miller") was travelling … west on Route 422 in Exeter Township, Berks County, Pennsylvania. N.T. at 120, 122. Officer Miller was operating a marked police car and dressed in full uniform displaying a badge of authority. N.T. at 120. Officer Miller observed a gray Ford, later determined to be Appellant's Vehicle, travelling at a high rate of speed in the area of Shelbourne Road. N.T. at 120. There were not many cars on the road. N.T. at 120. Officer Miller pulled behind Appellant's Vehicle and timed the vehicle for 4 or 5 blocks. N.T. at 120. After determining the speed of the vehicle and observing very dark window tint, Officer Miller initiated a traffic stop in the parking lot of the Giant grocery store in the Exeter Commons Mall. N.T. at 121, 137. The Giant grocery store was open at that time. N.T. at 137. The vehicle came to a stop on its own in the parking lot. N.T. at 121. Officer Miller pulled up to the side of Appellant's Vehicle so as to form a T-shape with his white takedown lights shining onto the vehicle. N.T. at 121-122. Officer Miller did not activate his overhead lights. N.T. at 121. Officer Miller came into contact with Appellant, the operator of Appellant's Vehicle. N.T. at 122. He identified himself and asked Appellant where he was coming from. N.T. at 122, 123. Appellant stated that he was picking up a car at a repair shop in Pottstown. N.T. at 122-123. At Officer Miller's request, Appellant provided him with his vehicle registration and a Pennsylvania identification card but did not produce a driver's

- 2 -

license. N.T. at 123. Officer Miller subsequently learned that Appellant's driver's license was suspended. N.T. at 299. Appellant appeared nervous when interacting with Officer Miller. N.T. at 123. The vehicle was registered to Appellant and nobody else was present inside of the vehicle. N.T. at 123, 216, 225.

Due to the dark window tint, Officer Miller contacted Officer Scott of the Exeter Township Police Department ("Officer Scott") to use his tint meter. N.T. at 124. Officer Scott arrived on scene while Officer Miller was seated in his patrol vehicle checking the validity of Appellant's photo identification and the vehicle's registration. N.T. at 124, 215. Officer Scott approached the vehicle and engaged Appellant in conversation. N.T. at 124, 216, 225. He was in full uniform and wearing a badge of authority. N.T. at 214. Officer Scott then went back to talk with Officer Miller before re-engaging Appellant a second time and asking him to exit his vehicle. N.T. at 216, 230. As Officer Miller was still in possession of Appellant's paperwork, Officer Scott yelled that Appellant was running. N.T. at 125, 149, 150, 218-219. Appellant shifted Appellant's Vehicle into drive and began traveling at a high rate of speed through the parking lot. N.T. at 125, 126, 217-219, 230. Appellant continued through the parking lot at a high rate of speed with both officers in pursuit. N.T. at 126, 219. 220. Officer Miller did not activate his lights and siren. N.T. at 126. As Appellant was fleeing the officers, his vehicle struck a steep embankment on his way to the upper parking lot near Panera Bread and the Boscov's Outlet. N.T. at 126, 220. The officers briefly lost sight of Appellant for 2 to 5 seconds as they proceeded to the upper parking lot. N.T. at 127, 155, 220-221. When the officers arrived at the upper parking lot they observed Appellant running west from the vehicle in the parking lot.[11] N.T. at 128, 221, 222. Appellant was an estimated 30 to 45 feet (10 to 15 yards) from the vehicle when the officers observed him. N.T. at 128, 221. The officers continued to pursue Appellant in their patrol vehicles until Appellant ran out of space and complied with Officer Miller's command to stop. N.T. at 128, 129, 223. Appellant was then taken into custody. N.T. at 129, 130. 223. At no time did Officer Miller tell Appellant he was free to leave. N.T. at 124, 150.

[11] The Boscov's Outlet was not open when Appellant drove his vehicle into the parking lot. However, the business is generally open and this area is not closed up or typically empty. *Id*. The Boscov's Outlet is a

retail establishment where people can come and go. *Id*.

After Appellant was taken into custody, law enforcement officers located the Firearm[12] an estimated 30 to 60 feet (10 to 20 yards) west of the path Appellant was traveling when he ran from his vehicle in the upper lot. N.T. at 132, 133, 139, 142, 143, 147, 167, 175, 224. A fully loaded magazine containing 15 bullets was inside of the Firearm. N.T. at 157-158, 169, 176, 178. Nobody saw the Firearm fly out of the car or trunk or saw Appellant throw or hold the Firearm. N.T. at 133, 155-156, 183-184, 223, 224. The serial number on the Firearm was obliterated but law enforcement was able to obtain the number to identify the owner of the Firearm, Ms. Woods. N.T. at 139, 147, 163-164, 180, 184, 185-188. Officer Miller learned from the Pennsylvania State Police that Appellant did not have a license to carry a firearm. N.T. at 147. The Firearm was determined to be operable. N.T. at 199. A search warrant was obtained for the vehicle and the officers located a clear plastic bag containing fentanyl and methamphetamine inside of the glove box of Appellant's Vehicle. N.T. at 140, 142, 145, 195.

> 12 Officer Miller determined that the length of the firearm was less than 26 inches and the barrel length was less than 15 inches. N.T. at 148.

Trial Court Opinion, 8/14/18, at 3-6.

Appellant was charged with the following crimes: two counts of possession of a controlled substance; and one count each of persons not to possess, use, manufacture, control, sell or transfer firearms; possession of firearm with altered manufacturer's number, firearms not to be carried without a license; escape; reckless driving; driving while operating privilege is suspended or revoked; windshield obstructions and wipers; and driving

- 4 -

vehicle at safe speed.[1]  On February 6, 2018, a jury convicted Appellant of all counts, and the trial court found Appellant guilty of each summary offense charged.  On February 6, 2018, the trial court sentenced Appellant to serve an aggregate term of incarceration of seven to fifteen years, with credit for time served.  Appellant filed a timely *pro se* motion for reconsideration of sentence, which the trial court denied on May 8, 2018.  This timely appeal followed.[2]  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

---

[1] 35 P.S. § 780-113(a)(16); 18 Pa.C.S. §§ 6105(a)(1), 6110.2(a), 6106(a)(1), 5121(a); 75 Pa.C.S. §§ 3736(a), 1543(b)(1), 4524(e)(1), and 3361, respectively.

[2] We note that the trial court's docket indicates Appellant's notice of appeal was filed on May 23, 2018, which was more than thirty days after the judgment of sentence entered on February 6, 2018.  ***See*** Pa.R.A.P. 903 (setting forth thirty-day period in which to timely file appeal).  However, Pa.R.Crim.P. 720 provides that a party may file post-sentence motions no later than ten days after imposition of the judgment of sentence.  A timely filed post-sentence motion tolls the appeal period, and an untimely post-sentence motion does not toll the appeal period. ***Commonwealth v. Dreves***, 839 A.2d 1122 (Pa. Super. 2003) (*en banc*); ***Commonwealth v. Felmlee***, 828 A.2d 1105 (Pa. Super. 2003) (*en banc*).  The record reflects that Appellant's *pro se* post-sentence motion for reconsideration of sentence was received by the trial court on February 22, 2018, which appears to be beyond the ten-day filing period and would not serve to toll the appeal period.  Consequently, on June 13, 2018, this Court entered an order directing Appellant to show cause why his appeal should not be quashed as untimely filed.

Counsel for Appellant has responded to the rule to show cause indicating that Appellant, who is incarcerated within the Berks County Jail System at a facility in Leesport, PA, timely filed his *pro se* post-sentence motion on Friday, February 16, 2018, when he placed the document in the hands of prison authorities for mailing.  Thus, Appellant has employed the prisoner mailbox

As noted, counsel has filed a petition to withdraw from representation. Before we address any questions raised on appeal, we must resolve appellate counsel's request to withdraw. **Commonwealth v. Cartrette**, 83 A.3d 1030 (Pa. Super. 2013) (*en banc*). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on direct appeal. The procedural mandates are that counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Id*. at 1032 (citation omitted).

In this case, those directives have been satisfied. Within the petition to withdraw, counsel averred that she conducted a conscientious review of the

---

rule. **See Commonwealth v. Wilson**, 911 A.2d 942, 944 (Pa. Super. 2006) (recognizing that under the "prisoner mailbox rule," a document is deemed filed when placed in the hands of prison authorities for mailing). Under that rule, "we are inclined to accept any reasonably verifiable evidence of the date that the prisoner deposits the appeal with the prison authorities. . . ." **Commonwealth v. Perez**, 799 A.2d 848, 851 (Pa. Super. 2002) (quoting **Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997)). We observe that counsel for Appellant has referred this Court to the mailing envelope that contained the post-sentence motions and is included in the certified record. The envelope was addressed to the "Clerk of Courts" and postmarked in Harrisburg by the United States Postal Service on Tuesday, February 20, 2018. We further observe that Monday, February 19, 2018, was President's Day, a national holiday. Accordingly, we conclude that, pursuant to the prisoner mailbox rule, Appellant timely filed his *pro se* post-sentence motion, thereby tolling the appeal period. Hence, it is our determination that this appeal is timely.

record and pertinent legal research. Following that review, counsel concluded that the present appeal is frivolous. Counsel sent Appellant a copy of the *Anders* brief and petition to withdraw, as well as a letter, a copy of which is attached to the petition to withdraw. In the letter, counsel advised Appellant that he could represent himself or that he could retain private counsel. Appellant has not filed any additional documents with this Court.

We now examine whether the *Anders* brief satisfies the Supreme Court's dictates in *Santiago*, which provide that:

> in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Cartrette*, 83 A.3d at 1032 (quoting *Santiago*, 978 A.2d at 361).

Counsel's brief is compliant with *Santiago*. The brief sets forth the procedural history of this case, outlines pertinent case authority, and discusses counsel's conclusion that the appeal is frivolous. We thus conclude that the procedural and briefing requirements for withdrawal have been met.

Counsel has identified the following issues that Appellant believes entitle him to relief, which we set forth verbatim:

> 1. WHETHER THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE VERDICT IN THAT THE COMMONWEALTH FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THE ELEMENTS OF PERSONS NOT TO POSSESS, USE,

MANUFACTURE, CONTROL, SELL OR TRANSFER FIREARMS, POSSESSION OF FIREARM WITH ALTERED MANUFACTURER'S NUMBERS, FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE, ESCAPE, TWO COUNTS OF POSSESSION OF A CONTROLLED SUBSTANCE, RECKLESS DRIVING, DRIVING WHILE OPERATING PRIVILEGE IS SUSPENDED OR REVOKES, WINDSHIELD OBSTRUCTIONS AND WIPERS AND DRIVING VEHICLE AT A SAFE SPEED ?

2. WHETHER THE VERDICTS OF GUILT OF PERSONS NOT TO POSSESS, USE, MANUFACTURE, CONTROL, SELL OR TRANSFER FIREARMS, POSSESSION OF FIREARM WITH ALTERED MANUFACTURER'S NUMBERS, FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE, ESCAPE, TWO COUNTS OF POSSESSION OF A CONTROLLED SUBSTANCE, RECKLESS DRIVING, DRIVING WHILE OPERATING PRIVILEGE IS SUSPENDED OR REVOKES, WINDSHIELD OBSTRUCTIONS AND WIPERS AND DRIVING VEHICLE AT A SAFE SPEED WAS CONTRARY TO THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL?

3. WHETHER THE SENTENCING COURT ABUSED ITS DISCRETION WHEN IT SENTENCED APPELLANT TO A CONSECUTIVE SENTENCES RESULTING IN A CUMULATIVE SENTENCE OF INCARCERATION OF SEVEN (7) TO FIFTEEN (15) YEARS THAT IS SO MANIFESTLY EXCESSIVE AS TO CONSTITUTE TOO SEVERE A PUNISHMENT WHERE THE FACTORS ENUMERATED IN THE SENTENCING CODE, SPECIFICALLY THE PROTECTION OF THE PUBLIC, THE GRAVITY OF THE OFFENSE AS IT RELATES TO THE IMPACT ON THE COMMUNITY, AND APPELLANT'S INDIVIDUAL REHABILITATIVE NEEDS AND MITIGATING CIRCUMSTANCES DO NOT MILITATE IN FAVOR OF TOTAL CONFINEMENT OF THE LENGTH IMPOSED UPON APPELLANT CAUSING THE SENTENCE TO BE CLEARLY UNREASONABLE?

*Anders* Brief at 8.

Appellant first argues that the evidence was insufficient to support his convictions. *Anders* Brief at 15-23. Specifically, Appellant contends that the evidence did not show beyond a reasonable doubt that Appellant committed the firearm violations, *Anders* Brief at 16-19, the controlled substance crimes,

*id*. at 19-20, the crime of escape, *id*. at 20-22, and the driving offenses of operating without a license, driving at an unsafe speed, and reckless driving. *Id*. at 22.

Our standard of review is well established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

We have reviewed the briefs of the parties, the certified record before us on appeal, and the trial court opinion entered August 14, 2018. It is our conclusion that the trial court's opinion adequately and accurately addresses each of the challenges to the sufficiency of the evidence presented by Appellant. Specifically: Appellant's convictions of various firearms violations at pages seven through nine, Appellant's convictions of controlled substance violations at pages nine through ten, Appellant's convictions of escape at

pages ten through twelve, and Appellant's convictions of motor vehicle violations at pages twelve through fourteen. Under the totality of the circumstances, the evidence presented at the trial, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Appellant's convictions. Consequently, Appellant's contrary claim lacks merit. Accordingly, we affirm based on the trial court's opinion and adopt its analysis as our own.[3]

Appellant next argues that the guilty verdicts were against the weight of the evidence. *Anders* Brief at 23-25. Appellant contends that the evidence establishes that he possessed neither a gun nor controlled substances on the date in question. *Id*. at 24. Appellant also claims that the evidence proves that the police did not officially detain him; therefore, he could not have escaped. *Id*. In addition, he asserts that the evidence did not support guilty verdicts of the motor vehicle violations. *Id*. Essentially, Appellant claims that the verdicts of guilty rendered by the jury are so contrary to the weight of the evidence that they shock one's sense of justice such that his convictions should be reversed and a new trial ordered.

In *Commonwealth v. Clay*, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

---

[3] The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319-[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on

- 11 -

a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 560 A.2d at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

*Clay*, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-880 (Pa. 2008).

The trial court addressed the challenge to the weight of the evidence as follows:

> In the case at bar, Appellant claims that the verdicts were against the weight of the evidence. However, as set forth above in this court's analysis of the sufficiency of the evidence, the verdict was not contrary to the evidence as the jury and this court were presented with a case upon which to convict the Appellant. The verdicts indicate that the jury and this court evaluated the evidence, determined the credibility of witnesses and, when assessing the weight of the evidence, believed the evidence presented by the prosecution and rendered a guilty verdict. Therefore, the verdicts were consistent with the evidence presented and did not shock anyone's sense of justice.

- 12 -

Trial Court Opinion, 11/8/17, at 3-5.

Based upon our complete review of the record, we are compelled to agree with the trial court. Here, the jury and the trial court, sitting as the finders of fact, were free to believe all, part, or none of the evidence against Appellant. The jury and the trial court weighed the evidence and concluded Appellant perpetrated the firearms violations, the narcotics violations, the crime of escape, and the motor vehicle violations. We agree that these determinations are not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

Appellant last argues that the trial court abused its discretion in fashioning his sentence. *Anders* Brief at 25-28. Appellant claims that the trial court did not properly consider the statutory sentencing factors in imposing Appellant's sentence. *Id*. at 26. Appellant further asserts that the trial court imposed an excessive sentence when it ordered that several of Appellant's sentences should run consecutively. *Id*. at 27.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). An appellant challenging the discretionary

aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id*.

Herein, the first three requirements of the four-part test are met. Appellant brought an appropriate appeal, raised the challenge in a post-sentence motion, and included in his appellate brief the necessary concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

In his Rule 2119(f) statement, Appellant first argues that the trial court abused its discretion by failing to consider the sentencing factors enumerated at 42 Pa.C.S. § 9721(b). **Anders** Brief at 13. Appellant claims that the trial court failed to consider his rehabilitative needs, the gravity of the offenses, the impact of the crimes on the victims and the community at large. **Id**. This Court has found a substantial question exists where there is an allegation that the sentencing court failed to consider the factors set forth in 42 Pa.C.S. § 9721(b). **See Commonwealth v. Fullin**, 892 A.2d 843, 847 (Pa. Super. 2006) (concluding that the appellant raised a substantial question where it was alleged that the trial court failed to properly consider the factors set forth in 42 Pa.C.S. § 9721(b)). Therefore, Appellant has raised a substantial question. As such, we will review the merits of Appellant's first sentencing claim.

In his Rule 2119(f) statement, Appellant also claims that the trial court abused its discretion by imposing consecutive sentences that caused the total length of this sentence to be manifestly excessive. **Anders** Brief at 13. Appellant "argues that the aggregate sentence imposed by the trial court was not individualized to the facts and circumstances surrounding his case." **Id**.

To the extent Appellant challenges the consecutive nature of his sentences, we note that "42 Pa.C.S.A. [§] 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.

- 15 -

Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." **Commonwealth v. Pass**, 914 A.2d 442, 446-447 (Pa. Super. 2006).

"Generally, Pennsylvania law 'affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.'" **Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011) (quoting **Pass**, 914 A.2d at 446-447). **See also Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa. Super. 1995) (stating appellant is not entitled to "volume discount" for his crimes by having all sentences run concurrently). **But see Commonwealth v. Dodge**, 77 A.3d 1263, 1273 (Pa. Super. 2013) (a claim that an aggregate sentence resulting from the imposition of consecutive sentences is excessive raises a substantial question if the "decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case").

"Thus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." **Prisk**, 13 A.3d at 533 (quoting **Commonwealth v. Mastromarino**, 2 A.3d 581, 587 (Pa. Super.

2010)). ***But see Commonwealth v. Austin***, 66 A.3d 798 (Pa. Super. 2013) (holding that challenge to imposition of consecutive sentences, which yields extensive aggregate sentence, does not necessarily present substantial question as to discretionary aspects of sentencing, unless court's exercise of discretion led to sentence that is grossly incongruent with criminal conduct at issue and patently unreasonable).

While a substantial question "appears" to exist on the ground alleged, we must emphasize that Appellant's diverse convictions stem from an incident that began with a simple traffic stop for improperly tinted windows, which turned into a high-speed chase in the middle of the night. Further, the sentencing court did not impose consecutive sentences for every conviction. Rather, the sentencing court imposed concurrent sentences on multiple crimes. In fact, the aggregate sentence imposed was significantly lower than the sentence of fourteen to twenty-eight years requested by the Commonwealth at the time of sentencing. In seeking review of his sentences, Appellant is not entitled to any further "volume discount" for his multiple offenses. ***Hoag***, 665 A.2d at 1214. Based upon the foregoing, we will not deem the aggregate sentence excessive in light of the ample amount of criminal conduct at issue in this case. ***Prisk***, 13 A.3d at 533. Accordingly, we conclude that Appellant has not presented a substantial question for our review in this regard. Hence, we limit our review of this issue to Appellant's

claim that the trial court abused its discretion in failing to consider the factors set forth at 42 Pa.C.S. § 9721(b).

It is undisputed that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. ***Id***. Rather, an appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. ***Id***.

The sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view a defendant's character, displays of remorse, defiance, or indifference and the overall effect and nature of the crime. ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted).[4] When imposing a sentence, the

---

[4] The ***Walls*** Court instructed the following:

> In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:
>
> (d) Review of the record—In reviewing the record the appellate court shall have regard for:

sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As we have stated, "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." **Id**.

Moreover, the Pennsylvania Supreme Court reiterated "the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a

---

(1) The nature of the circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

**Walls**, 926 A.2d at 963.

particular sentence." ***Commonwealth v. Perry***, 32 A.3d 232, 240 (Pa. 2011) (citation omitted).

> Simply put, the sentencing judge must state his or her reasons for the sentence imposed, a discourse on the court's sentencing philosophy . . . is not required. The sentencing judge must explain its deviation from the guidelines if he or she chooses to sentence outside the guidelines. . . . The sentencing court is **not** required to state its reasons for sentencing within one **guideline range** over another.

***Commonwealth v. Hill***, 629 A.2d 949, 953 (Pa. Super. 1993) (citations and quotations omitted, emphases in original).

Further, "[t]he guidelines only include a prior conviction score and do not take into account whether an offense is committed while the offender was on probation, parole or some other form or type of supervised release." ***Commonwealth v. Simpson***, 829 A.2d 334, 339 (Pa. Super. 2003). "This is an extraneous factor that can be separately considered by the sentencing court." ***Id***. In addition, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citing ***Commonwealth v. Devers***, 546 A.2d 12 (Pa. 1988)).

Our review of the record reflects that, at the time of Appellant's sentencing, the trial court had received and reviewed a presentence report. N.T., 2/5-6/18, at 306-307, 309-310. Further, the trial court heard argument

from Appellant's counsel, which focused upon Appellant's youth and included a request for vocational training. *Id*. at 307-308. The trial court then heard Appellant's allocution. *Id*. at 308. Immediately following Appellant's allocution and prior to announcing the judgment of sentence, the trial court gave a detailed account of Appellant's personal and criminal history, the instant crimes and their impact upon the community, and Appellant's rehabilitative needs. *Id*. at 309-312.

The trial court further elaborated its reasoning for imposition of the specific sentence upon Appellant in its written opinion, as follows:

> In the case at bar, Appellant has failed to raise a substantial question regarding this court's decision to impose consecutive sentences. The cumulative sentence is not excessive when considering Appellant's criminal conduct. Appellant committed multiple offenses and is not entitled to a volume discount for his conduct. However, this court ran multiple counts of Appellant's sentences concurrent with each other to arrive at a sentence of 7 to 15 years. If all of Appellant's sentences would have run consecutive to each other, Appellant would have received a cumulative sentence of 16 ½ - 35 years. This court did not abuse its discretion when it sentenced Appellant to serve consecutive sentences on some of the offenses.

> This Court sentenced the Appellant within the parameters of the sentencing guidelines[13] and, therefore, the Appellant must demonstrate that the application of those guidelines would be clearly unreasonable. 42 Pa.C.S.A. §9781(c)(2). Upon review of the factors as set forth in 42 Pa.C.S. §9781(d), this [c]ourt's application of the sentencing guidelines was clearly reasonable. Appellant was found guilty after a jury trial of various offenses regarding the possession of a firearm as well as drug possession and escape. Appellant has a considerable prior record consisting of both felony and misdemeanor offenses, many of which occurred while under supervision for prior offenses. N.T. at 310-311. This court had the benefit of a presentence investigation and reviewed this document at sentencing. N.T. at 302, 306-307, 309-310.

This court considered the sentencing factors set forth in 42 Pa.C.S.A. §9721(b), the nature of the offense, arguments from the Commonwealth and Appellant, Appellant's risk of recidivism, and the rehabilitative needs of Appellant. N.T. at 309. This court also considered the factors in favor of probation and total confinement, the trial testimony and Appellant's statements. N.T. at 309. In consideration of these factors, this Court imposed standard range sentences on Appellant for all charges which was reasonable under the circumstances.

[13] At sentencing, Appellant had a prior record score of 5. N.T. at 302. The offense gravity score for Count 1, Persons not to Possess, Use Manufacture, Control, Sell or Transfer Firearms, 18 Pa.C.S.A. §6105(a)(1). is 10 resulting in a standard range of 60-72 months, plus or minus 12 months. N.T. at 303; 204 PA ADC §303.15; 204 PA ADC §303.16(a). Appellant was sentenced to serve 5 years to 10 years in a State Correctional Facility. N.T. at 311. The offense gravity score for Count 2, Possession of Firearm with Altered Manufacturer's Number, 18 Pa.C.S.A. §6110.2(a), is also 10 resulting in a standard range of 60-72 months, plus or minus 12 months. Appellant was sentenced to serve 5 to 10 years in a State Correctional Facility concurrent with Count 1. N.T. at 312. The offense gravity score for Count 3, Firearms not to be carried without a License, 18 Pa.C.S.A. §6106(a)(1), is 9 resulting in a standard range of 48-60 months, plus or minus 12 months. N.T. at 303. Appellant was sentenced to serve 3 1/2-7 years in a State Correctional Facility concurrent with Count 1. N.T. at 312. The offense gravity score for Count 4, Escape, 18 Pa.C.S.A. §5121(a) is 3 resulting in a standard range of 6-16, plus or minus 3. N.T. at 303. Appellant was sentenced to serve 1-2 years in a State Correctional Facility consecutive to Count 1. N.T. at 313. The offense gravity score for Counts 5 and 6, Possession of a Controlled Substance, 35 P.S. §780-113(a)(16), is 3 resulting in a standard range of 6-16, plus or minus 3. N.T. at 303. Appellant was sentenced to serve 1-3 years in a State Correctional Facility on both counts consecutive to Count 4 and concurrent with each other. N.T. at 313.

Appellant claims that this court failed to consider the sentencing factors and mitigating circumstances when sentencing Appellant. As set forth above, this court had the benefit of a presentence investigation. ... Additionally, this court stated that it considered the factors set forth in 42 Pa.C.S.A. §9721(b) as well as other additional information set forth above. Therefore, Appellant's claim must fail as it is contradicted by the record.

Trial Court Opinion, 8/14/18, at 18-19.

We conclude that the reasons the trial judge offered for the sentence imposed were more than sufficient to conclude that the trial court properly considered all relevant factors in fashioning Appellant's sentence. Also, because the trial court had been fully informed and relied upon the presentence report, we conclude that the trial court did not abuse its discretion in creating the instant sentence. Accordingly, Appellant's claim that the trial court failed to consider the appropriate factors in imposing the sentence lacks merit.

Finally, we have independently reviewed the record in order to determine whether there are any non-frivolous issues present in this case that Appellant may raise. *Commonwealth v. Yorgey*, 188 A.3d 1190, 1198-1199 (Pa. Super. 2018) (*en banc*). Having concluded that there are no meritorious issues, we grant Appellant's counsel permission to withdraw, and we affirm the judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/15/2019

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
                                 :   OF BERKS COUNTY, PENNSYLVANIA

                                 :   CRIMINAL DIVISION

                VS.             :

                                 :   No. CP-06-CR-0002884-2017

                                 :

ANDRE WALKER                 :   Assigned to: Judge M. Theresa Johnson

Kristine M. Cahill, Esquire
    *Attorney for Appellant*

Alisa R. Hobart, Esquire
    *Attorney for the Commonwealth/Appellee*

Memorandum Opinion          August 14, 2018          M. Theresa Johnson, J.

## PROCEDURAL HISTORY

The defendant in the above-captioned case, Andre Walker ("Appellant"), was charged

with the following offenses arising from an incident alleged to have occurred on May 27, 2017:

Persons not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms,[1] Possession of

Firearm with Altered Manufacturer's Number,[2] Firearms not to be Carried without a License,[3]

Escape,[4] two counts of Possession of a Controlled Substance,[5] Reckless Driving,[6] Driving while

Operating Privilege is Suspended or Revoked,[7] Windshield Obstructions and Wipers,[8] and

Driving Vehicle at Safe Speed.[9] On February 6, 2018, a jury found the Appellant guilty on all

counts. Notes of Testimony, Jury Trial, February 5, 2018 to February 6, 2018 ("N.T."), at 275,

296-297. This Court found the Appellant guilty of each summary offense charged. N.T. at 300.

Appellant was sentenced to serve a cumulative sentence of seven (7) years to fifteen (15) years in

---

[1] 18 Pa.C.S.A. §6105(a)(1).
[2] 18 Pa.C.S.A. §6110.2(a).
[3] 18 Pa.C.S.A. §6106(a)(1).
[4] 18 Pa.C.S.A. §5121(a).
[5] 35 P.S. §780-113(a)(16).
[6] 75 Pa.C.S.A. §3736(a).
[7] 75 Pa.C.S.A. §1543(b)(1).
[8] 75 Pa.C.S.A. §4524(e)(1).
[9] 75 Pa.C.S.A. §3361.

a State Correctional Facility and to pay fines on the summary charges. N.T. at 311-314. Appellant was given a credit of two hundred fifty six (256) days for time served. N.T. at 312. On February 22, 2018, Appellant filed a Motion for Reconsideration of Sentence which this Court denied by order dated May 8, 2018.

On May 23, 2018, Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania from the Order of May 8, 2018, denying Appellant's Motion for Reconsideration of Sentence. On May 30, 2018, Appellant was ordered to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On June 15, 2018, Appellant filed a Concise Statement of Matters Complained of on Appeal raising the following issues: 1) there was insufficient evidence presented at trial to prove beyond a reasonable doubt that Appellant committed Persons not to Possess a Firearm, Possession of a Firearm with Altered Manufacturer's Number, Firearms not to be Carried without a License, Possession of a Controlled Substance, Escape and Driving while Operating Privilege is Suspended or Revoked; 2) the verdicts of guilty on Persons not to Possess a Firearm, Possession of a Firearm with Altered Manufacturer's Number, Firearms not to be Carried without a License, Possession of a Controlled Substance, Escape and Driving while Operating Privilege is Suspended or Revoked were against the weight of the evidence; and 3) this Court abused its discretion when it imposed a cumulative sentence on Appellant of seven (7) years to fifteen (15) years in a State Correctional Facility. On June 20, 2018, Appellant filed and this court granted Appellant's Petition for Permission for an Extension of Time to File 1925(b) Statement. However, no additional 1925(b) statement was filed by Appellant.

BERKS COUNTY, PA
2018 AUG 14 AM 9:48
CLERK OF COURTS

2

## DISCUSSION

### Statement of Facts

On Friday, May 26, 2017, Appellant lent his vehicle ("Appellant's Vehicle") to his friend, Alexis Woods[10] ("Ms. Woods"), to run some errands while her car was in the shop. N.T. at 94-96, 107. On that date, Ms. Woods was the registered owner of a 9 millimeter Ruger firearm ("the Firearm"). N.T. at 95. Ms. Woods placed the Firearm inside of Appellant's Vehicle. N.T. at 95, 108. Ms. Woods put the Firearm's loaded magazine inside of the glove box and put the Firearm inside of a bag located in the trunk. N.T. at 97, 108. The Firearm was not scratched and the serial number was able to be read when Ms. Woods put the Firearm into Appellant's Vehicle. N.T. at 101-102, 105. Ms. Woods intended to go to a range to shoot the Firearm but, due to an incident with her son, did not get to the range and returned Appellant's Vehicle to Appellant. N.T. at 95-97, 112-113. When Ms. Woods returned Appellant's Vehicle, Appellant and his associates entered Appellant's Vehicle and Appellant transported Ms. Woods to get cigarettes and then to her residence. N.T. at 96, 97-98, 109-117, 152. Ms. Woods did not remove the Firearm from Appellant's Vehicle. N.T. at 96, 114. At no time did Ms. Woods drive Appellant's Vehicle to Panera Bread or the Boscov's Outlet Center in Exeter Township, Reading, Pennsylvania. N.T. at 98.

On Saturday, May 27, 2017, at 3:24 a.m., Officer Christopher Miller of the Exeter Township Police Department ("Officer Miller") was travelling on west on Route 422 in Exeter Township, Berks County, Pennsylvania. N.T. at 120, 122. Officer Miller was operating a marked police car and dressed in full uniform displaying a badge of authority. N.T. at 120. Officer Miller observed a gray Ford, later determined to be Appellant's Vehicle, travelling at a high rate of speed in the area of Shelbourne Road. N.T. at 120. There were not many cars on the

---

[10] Alexis Woods is also known by her married name, Alexis Lockett. N.T. at 93, 151.

3

road. N.T. at 120. Officer Miller pulled behind Appellant's Vehicle and timed the vehicle for 4 or 5 blocks. N.T. at 120. After determining the speed of the vehicle and observing very dark window tint, Officer Miller initiated a traffic stop in the parking lot of the Giant grocery store in the Exeter Commons Mall. N.T. at 121, 137. The Giant grocery store was open at that time. N.T. at 137. The vehicle came to a stop on its own in the parking lot. N.T. at 121. Officer Miller pulled up to the side of Appellant's Vehicle so as to form a T-shape with his white take-down lights shining onto the vehicle. N.T. at 121-122. Officer Miller did not activate his overhead lights. N.T. at 121. Officer Miller came into contact with Appellant, the operator of Appellant's Vehicle. N.T. at 122. He identified himself and asked Appellant where he was coming from. N.T. at 122, 123. Appellant stated that he was picking up a car at a repair shop in Pottstown. N.T. at 122-123. At Officer Miller's request, Appellant provided him with his vehicle registration and a Pennsylvania identification card but did not produce a driver's license. N.T. at 123. Officer Miller subsequently learned that Appellant's driver's license was suspended. N.T. at 299. Appellant appeared nervous when interacting with Officer Miller. N.T. at 123. The vehicle was registered to Appellant and nobody else was present inside of the vehicle. N.T. at 123, 216, 225.

Due to the dark window tint, Officer Miller contacted Officer Scott of the Exeter Township Police Department ("Officer Scott") to use his tint meter. N.T. at 124. Officer Scott arrived on scene while Officer Miller was seated in his patrol vehicle checking the validity of Appellant's photo identification and the vehicle's registration. N.T. at 124, 215. Officer Scott approached the vehicle and engaged Appellant in conversation. N.T. at 124, 216, 225. He was in full uniform and wearing a badge of authority. N.T. at 214. Officer Scott then went back to talk with Officer Miller before re-engaging Appellant a second time and asking him to exit his

4

vehicle. N.T. at 216, 230. As Officer Miller was still in possession of Appellant's paperwork, Officer Scott yelled that Appellant was running. N.T. at 125, 149, 150, 218-219. Appellant shifted Appellant's Vehicle into drive and began traveling at a high rate of speed through the parking lot. N.T. at 125, 126, 217-219, 230. Appellant continued through the parking lot at a high rate of speed with both officers in pursuit. N.T. at 126, 219. 220. Officer Miller did not activate his lights and siren. N.T. at 126. As Appellant was fleeing the officers, his vehicle struck a steep embankment on his way to the upper parking lot near Panera Bread and the Boscov's Outlet. N.T. at 126, 220. The officers briefly lost sight of Appellant for 2 to 5 seconds as they proceeded to the upper parking lot. N.T. at 127, 155, 220-221. When the officers arrived at the upper parking lot they observed Appellant running west from the vehicle in the parking lot.[11] N.T. at 128, 221, 222. Appellant was an estimated 30 to 45 feet (10 to 15 yards) from the vehicle when the officers observed him. N.T. at 128, 221. The officers continued to pursue Appellant in their patrol vehicles until Appellant ran out of space and complied with Officer Miller's command to stop. N.T. at 128, 129, 223. Appellant was then taken into custody. N.T. at 129, 130. 223. At no time did Officer Miller tell Appellant he was free to leave. N.T. at 124, 150.

After Appellant was taken into custody, law enforcement officers located the Firearm[12] an estimated 30 to 60 feet (10 to 20 yards) west of the path Appellant was traveling when he ran from his vehicle in the upper lot. N.T. at 132, 133, 139, 142, 143, 147, 167, 175, 224. A fully loaded magazine containing 15 bullets was inside of the Firearm. N.T. at 157-158, 169, 176, 178. Nobody saw the Firearm fly out of the car or trunk or saw Appellant throw or hold the

---

[11] The Boscov's Outlet was not open when Appellant drove his vehicle into the parking lot. N.T. at 222. However, the business is generally open and this area is not closed up or typically empty. *Id.* The Boscov's Outlet is a retail establishment where people can come and go. *Id.*

[12] Officer Miller determined that the length of the firearm was less than 26 inches and the barrel length was less than 15 inches. N.T. at 148.

5

Firearm. N.T. at 133, 155-156, 183-184, 223, 224. The serial number on the Firearm was obliterated but law enforcement was able to obtain the number to identify the owner of the Firearm, Ms. Woods. N.T. at 139, 147, 163-164, 180, 184, 185-188. Officer Miller learned from the Pennsylvania State Police that Appellant did not have a license to carry a firearm. N.T. at 147. The Firearm was determined to be operable. N.T. at 199. A search warrant was obtained for the vehicle and the officers located a clear plastic bag containing fentanyl and methamphetamine inside of the glove box of Appellant's Vehicle. N.T. at 140, 142, 145, 195.

Evidence was introduced at trial showing that Appellant has a prior conviction for Possession with Intent to Deliver a Controlled Substance, cocaine, graded as a felony. N.T. at 281-282. Appellant was sentenced on October 1, 2015. N.T. at 281.

### Sufficiency of the Evidence - Generally

When reviewing a challenge to the sufficiency of the evidence supporting a defendant's conviction, an appellate court is required to evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Rahman*, 75 A.3d 497, 500 (Pa. Super. 2013) (citation omitted).

> The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that all of the elements of the crime have been established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible

6

with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Smith*, 848 A.2d 973, 977 (Pa. Super. 2004) (citation omitted).

An appellate court "may not substitute [its] judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." *Rahman*, 75 A.3d at 501.

When addressing a challenge to the sufficiency of the evidence in a conviction for a summary offense, the reviewing court must determine

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Williamson*, 616 A.2d 980, 981 (Pa. 1992).

### Sufficiency of the Evidence – Possession or Control of the Firearm

Appellant claims that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he committed Persons not to Possess a Firearm, Possession of a Firearm with Altered Manufacturer's Number and Firearms not to be Carried without a License. Concise Statement of Matters Complained of on Appeal, filed June 15, 2018. Appellant alleges that the evidence did not establish that Appellant had the Firearm in his possession or control. *Id.*

The "[i]llegal possession of a firearm may be established by constructive possession." *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018).

7

When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession, that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession. As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances. *Id*. (quotation marks, citations and ellipsis omitted).

"Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986); *See Commonwealth v. Roberts*, 133 A.3d 759, 768 (Pa. Super. 2016) (drugs located by law enforcement in appellant's flight path were sufficient to connect appellant to the specific area and prove that appellant was in constructive possession of the contraband).

In this case, the record shows that on Friday, May 26, 2017, Ms. Woods placed the Firearm into Appellant's Vehicle while she borrowed it to run errands. At that time, the magazine was separated from the Firearm and the Firearm's serial number was legible. However, Ms. Woods failed to remove the Firearm from Appellant's Vehicle before she returned it to him.

On Saturday, May 27, 2017, Appellant came into contact with Officer Miller and Officer Scott after the initiation of a traffic stop. During Appellant's interaction with law enforcement, Appellant fled from the officers in his vehicle and traveled at a high rate of speed to the upper parking lot near Panera Bread and the Boscov's Outlet. The officers lost sight of Appellant for 2 to 5 seconds as they proceeded to the upper parking lot. Appellant was between 30 to 45 feet away from his vehicle when he was observed again by the officers in the upper parking lot.

8

After Appellant was taken into custody, the Firearm was located 30 to 60 feet west of Appellant's flight path. When the Firearm was located, the loaded magazine had been inserted into the Firearm and the serial number had been obliterated.

Upon review of the evidence, a jury could have inferred that the Firearm was dropped or discarded by Appellant in the upper parking lot during the pursuit. The evidence showed that Ms. Woods placed her firearm into Appellant's Vehicle while borrowing it from Appellant. When Appellant fled to the upper parking lot by the Boscov's Outlet, the 2 to 5 second period of time that the officers lost sight of Appellant would have been enough time for him to dispose of the Firearm within the parking lot. When the Firearm was discovered, it was located along Appellant's flight path. Therefore, the jury could have determined that Appellant possessed the Firearm beyond a reasonable doubt.

### Sufficiency of the Evidence – Possession of a Controlled Substance

Appellant claims that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he committed two counts of Possession of a Controlled Substance. Concise Statement of Matters Complained of on Appeal, filed June 15, 2018. Appellant alleges that the evidence did not establish that Appellant knowingly or intentionally possessed fentanyl or methamphetamine. *Id.*

In the case at bar, there was no evidence that drugs were located on Appellant's person. Instead, the Commonwealth sought to establish that Appellant was in constructive possession of controlled substances.

The record indicates that Appellant was the sole occupant of Appellant's Vehicle when he came into contact with law enforcement. Appellant was also the registered owner of the vehicle. The controlled substances were located inside of a clear plastic bag in the vehicle's

9

glove box. Ms. Woods testified that she had placed the Firearm's loaded magazine in the glove box of the vehicle the previous day. The Firearm was subsequently located in the upper parking lot with a loaded magazine inserted into the Firearm. The jury could have inferred that Appellant removed the loaded magazine from the vehicle's glove box and inserted the magazine into the Firearm. Since Appellant had access to the glove box, he would have been able to place drugs there as well. As the sole occupant and registered owner of the vehicle, Appellant had the power to control the contraband and the evidence established his intent to exercise that control. Therefore, the jury could have determined that Appellant possessed fentanyl and methamphetamine beyond a reasonable doubt.

### Sufficiency of the Evidence - Escape

Appellant claims that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he committed Escape. Concise Statement of Matters Complained of on Appeal, filed June 15, 2018. Appellant alleges that the evidence did not establish that Appellant unlawfully removed himself from official detention. *Id.*

To sustain a conviction for the charge of Escape, the Commonwealth must prove that a defendant unlawfully removed himself or herself from official detention. 18 Pa.C.S.A. §5121(a). Official detention is defined by statute as including "arrest...or any other detention for law enforcement purposes." 18 Pa.C.S.A. §5121(e). Pennsylvania courts have interpreted the phrase "any other detention for law enforcement purposes" "to mean a seizure in which the police have restrained the liberty of a person by show of authority or physical force." *Commonwealth v. Santana*, 959 A.2d 450, 452 (Pa. Super. 2008) (quotation marks and citation omitted).

To decide whether a seizure has occurred, we apply the following objective test: a court must consider all the circumstances surrounding the encounter to determine whether the

10

police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. In applying this test, it is necessary to examine the nature of the encounter. Circumstances to consider include, but are not limited to, the following: the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Commonwealth v. Boswell*, 721 A.2d 336, 340 (Pa. 1998) (citations and quotation marks omitted).

The Pennsylvania Superior Court has held that a defendant is seized and subject to an investigative detention when a police officer requests and maintains possession of a defendant's identification. *Commonwealth v. Hudson*, 995 A.2d 1253 (Pa. Super. 2010). In this situation, "no reasonable person would [feel] free to terminate the encounter and depart the scene." *Id.* at 1259.

In the case at bar, it is clear to this court that Appellant was under official detention at the time he drove away from the officers. Officer Miller was operating a marked police car and was dressed in full uniform displaying a badge of authority when he encountered Appellant. Officer Miller parked his car in such a way that he formed a T-shape with Appellant's vehicle and he illuminated Appellant's vehicle with his take-down lights. Officer Miller then came into contact with Appellant and obtained his registration and Pennsylvania identification card. Officer Scott arrived a short time later and was also in full uniform displaying a badge of authority. He engaged Appellant in conversation and, during their second interaction, asked Appellant to step

11

out of the vehicle. While Officer Miller was finishing with Appellant's paperwork, Appellant shifted the vehicle into drive and fled the scene. The initial investigation into the purpose of the traffic stop was still underway and Appellant's paperwork had not been returned to him. Under these circumstances, a reasonable person would not have felt free to decline the officers' requests or otherwise terminate the encounter. Therefore, when viewing the evidence in the light most favorable to the Commonwealth, the jury could have determined that Appellant was under official detention beyond a reasonable doubt.

### Sufficiency of the Evidence – Driving while Operating Privilege is Suspended or Revoked

Appellant claims that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he committed Driving while Operating Privilege is Suspended or Revoked. Concise Statement of Matters Complained of on Appeal, filed June 15, 2018. Appellant alleges that the evidence did not establish that Appellant was driving upon a highway or trafficway while his license was suspended or revoked. *Id.*

The Pennsylvania Motor Vehicle Code defines highway and trafficway as follows:

**"Highway."** The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

**"Trafficway."** The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom. 75 Pa.C.S.A. §102.

12

A parking lot used by the public can satisfy the definition of a "trafficway" as set forth in Section 102 of the Pennsylvania Motor Vehicle Code. *Commonwealth v. Cameron*, 668 A.2d 1163, 1164 (Pa. Super. 1995). Pennsylvania courts have held "that where it is not clear that a particular parking lot is open to the public, the Commonwealth must establish that it is." *Commonwealth v. Proctor*, 625 A.2d 1221, 1224 (Pa. Super. 1993) (citation omitted).

In the case at bar, there was sufficient evidence presented for this court to conclude that Appellant operated his vehicle on a highway. Officer Miller was travelling west on Route 422 in Exeter Township when he observed Appellant's vehicle. He pulled behind Appellant's vehicle and tracked his speed for 4 to 5 blocks. Private roadways typically do not consist of 4 to 5 blocks of road. Additionally, Officer Miller testified that there were not many cars on the road at that time. This observation would imply that there could be many cars on the road leading to the inference that this is roadway open for public use. This court also notes that there was no testimony regarding the existence of any barriers or signs prohibiting the public from using Route 422. Based on this testimony, this court found that Route 422 was a highway beyond a reasonable doubt.

Assuming, arguendo, that the Commonwealth failed to establish that Appellant traveled on a highway, there was sufficient evidence to find that the parking lots traveled upon by Appellant were "trafficways" as defined by the Pennsylvania Motor Vehicle Code. Officer Miller came into contact with Appellant's vehicle in the parking lot of the Giant grocery store in the Exeter Commons Mall. The Giant grocery store was open at that time. There was no testimony that there were signs or barriers prohibiting the public from using the Giant grocery store's parking lot. This court found that the Giant parking lot was open to the public. Furthermore, there was testimony that the Boscov's Outlet parking lot is a retail establishment

13

with an open parking lot where people are able to come and go. This court also found that the Boscov's Outlet parking lot was open to the public. Therefore, the Commonwealth established beyond a reasonable doubt that both the Giant grocery store parking lot and the Boscov's Outlet parking lot were "trafficways" as defined by the Pennsylvania Motor Vehicle Code.

## Weight of the Evidence

Appellant claims that his convictions on Persons not to Possess a Firearm, Possession of a Firearm with Altered Manufacturer's Number, Firearms not to be Carried without a License, two counts of Possession of a Controlled Substance, Escape and Driving while Operating Privilege is Suspended or Revoked were against the weight of the evidence. Concise Statement of Matters Complained of on Appeal, filed June 15, 2018.

"A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted).

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

14

In the case at bar, Appellant claims that the verdicts were against the weight of the evidence. However, as set forth above in this court's analysis of the sufficiency of the evidence, the verdict was not contrary to the evidence as the jury and this court were presented with a case upon which to convict the Appellant. The verdicts indicate that the jury and this court evaluated the evidence, determined the credibility of witnesses and, when assessing the weight of the evidence, believed the evidence presented by the prosecution and rendered a guilty verdict. Therefore, the verdicts were consistent with the evidence presented and did not shock anyone's sense of justice.

### Appellant's Sentence

In the case at bar, Appellant claims that this Court's cumulative sentence of seven (7) years to fifteen (15) years in a State Correctional Facility was manifestly excessive under the circumstances. Concise Statement of Errors Complained of on Appeal, filed June 15, 2018. Appellant challenges the use of this Court's discretion to impose consecutive sentences, alleges that this court failed to consider the mitigating circumstances as well as the sentencing factors set forth in 42 Pa.C.S.A. §9721(b) and claims that the application of the sentencing guidelines was unreasonable. *Id.*

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (alterations and citation omitted).

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this

15

context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).

"There is no absolute right to appeal when challenging the discretionary aspect of a sentence. Rather, an appeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (alterations, quotation marks and citations omitted). "An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation and quotation marks omitted).

A sentencing court has "discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Pass*, 914 A.2d 442, 446-447 (Pa. Super. 2006) (citation omitted). "Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Id.* A defendant should not be given a volume discount for his crimes by having them all run concurrently. *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). However, "a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question." *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (citation omitted). A substantial question is raised when the decision to impose a consecutive sentence "raises the

16

aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case." *Id.* at 133-134.

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court. 42 Pa.C.S.A. §9781(c).

A trial court's standard-range sentence will only be reversed "if the sentence is clearly unreasonable when viewed in light of the four statutory factors outlined in 42 Pa.C.S. §9781(d)." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) (citations omitted). Specifically, the appellate court evaluates (1) [t]he nature and circumstances of the offense and the history and characteristics of the defendant; (2) [t]he opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) [t]he findings upon which the sentence was based; [and] (4) [t]he guidelines promulgated by the commission. 42 Pa.C.S. §9781(d).

When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. Where the sentencing court had the benefit of a presentence investigation

17

report ("PSI "), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *Commonwealth v. Griffin*, 65 A.3d 932, 937-938 (Pa. Super. 2013) (quotation marks and citations omitted).

In the case at bar, Appellant has failed to raise a substantial question regarding this court's decision to impose consecutive sentences. The cumulative sentence is not excessive when considering Appellant's criminal conduct. Appellant committed multiple offenses and is not entitled to a volume discount for his conduct. However, this court ran multiple counts of Appellant's sentences concurrent with each other to arrive at a sentence of 7 to 15 years. If all of Appellant's sentences would have run consecutive to each other, Appellant would have received a cumulative sentence of 16 ½ - 35 years. This court did not abuse its discretion when it sentenced Appellant to serve consecutive sentences on some of the offenses.

This Court sentenced the Appellant within the parameters of the sentencing guidelines[13] and, therefore, the Appellant must demonstrate that the application of those guidelines would be clearly unreasonable. 42 Pa.C.S.A. §9781(c)(2). Upon review of the factors as set forth in 42

---

[13] At sentencing, Appellant had a prior record score of 5. N.T. at 302. The offense gravity score for Count 1, Persons not to Possess, Use Manufacture, Control, Sell or Transfer Firearms, 18 Pa.C.S.A. §6105(a)(1), is 10 resulting in a standard range of 60-72 months, plus or minus 12 months. N.T. at 303; 204 PA ADC §303.15; 204 PA ADC §303.16(a). Appellant was sentenced to serve 5 years to 10 years in a State Correctional Facility. N.T. at 311. The offense gravity score for Count 2, Possession of Firearm with Altered Manufacturer's Number, 18 Pa.C.S.A. §6110.2(a), is also 10 resulting in a standard range of 60-72 months, plus or minus 12 months. Appellant was sentenced to serve 5 to 10 years in a State Correctional Facility concurrent with Count 1. N.T. at 312. The offense gravity score for Count 3, Firearms not to be carried without a License, 18 Pa.C.S.A. §6106(a)(1), is 9 resulting in a standard range of 48-60 months, plus or minus 12 months. N.T. at 303. Appellant was sentenced to serve 3 ½-7 years in a State Correctional Facility concurrent with Count 1. N.T. at 312. The offense gravity score for Count 4, Escape, 18 Pa.C.S.A. §5121(a), is 3 resulting in a standard range of 6-16, plus or minus 3. N.T. at 303. Appellant was sentenced to serve 1-2 years in a State Correctional Facility consecutive to Count 1. N.T. at 313. The offense gravity score for Counts 5 and 6, Possession of a Controlled Substance, 35 P.S. §780-113(a)(16), is 3 resulting in a standard range of 6-16, plus or minus 3. N.T. at 303. Appellant was sentenced to serve 1-3 years in a State Correctional Facility on both counts consecutive to Count 4 and concurrent with each other. N.T. at 313.

18

Pa.C.S. §9781(d), this Court's application of the sentencing guidelines was clearly reasonable. Appellant was found guilty after a jury trial of various offenses regarding the possession of a firearm as well as drug possession and escape. Appellant has a considerable prior record consisting of both felony and misdemeanor offenses, many of which occurred while under supervision for prior offenses. N.T. at 310-311. This court had the benefit of a presentence investigation and reviewed this document at sentencing. N.T. at 302, 306-307, 309-310. This court considered the sentencing factors set forth in 42 Pa.C.S.A. §9721(b), the nature of the offense, arguments from the Commonwealth and Appellant, Appellant's risk of recidivism, and the rehabilitative needs of Appellant. N.T. at 309. This court also considered the factors in favor of probation and total confinement, the trial testimony and Appellant's statements. N.T. at 309. In consideration of these factors, this Court imposed standard range sentences on Appellant for all charges which was reasonable under the circumstances.

Appellant claims that this court failed to consider the sentencing factors and mitigating circumstances when sentencing Appellant. As set forth above, this court had the benefit of a presentence investigation. Therefore, the Pennsylvania Superior Court will assume that this "court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Griffin*, 65 A.3d at 937-938. Additionally, this court stated that it considered the factors set forth in 42 Pa.C.S.A. §9721(b) as well as other additional information set forth above. Therefore, Appellant's claim must fail as it is contradicted by the record.

For the foregoing reasons, we respectfully request that Appellant's Appeal be DENIED and his sentence AFFIRMED.

19